

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-1999

# Rouse v. Plantier

Precedential or Non-Precedential:

Docket 98-5139

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Rouse v. Plantier" (1999). *1999 Decisions.* Paper 176.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/176

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 29, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5139

DARRYL LEON ROUSE

v.

WILLIAM PLANTIER, Acting Superintendent of A.D.T.C.;
SALLY S. SCHEIDEMANTEL, Resigning Superintendent of
A.D.T.C.; WILLIAM H. FAUVER, Commissioner of N.J.
Department of Corrections; GOVERNOR JIM FLORIO,
State of New Jersey; DR. ROBERT CARDINALE, Medical
Director of A.D.T.C.; DR. NARSHIMA REDDY, attending
Physician of A.D.T.C.; MS. ELAINE MARTIN, Chief Nurse
of A.D.T.C.; CAPTAIN HELMKIN, Housing; MIKE ZELL,
Director of Social Services; DR. SANDOVAL, Attending
Psychologist of A.D.T.C.; DR. CATTONE, M.D., St. Francis
Hospital; SCOTT FAUNCE; DR. TARLIAN, M.D.; DR.
O'BRYNE, M.D.; DR. TODD, M.D., St. Francis Hospital;
CHARLES BROOKS, on behalf of a class of themselves
and others similarly situated; STEPHEN JANKOWSKI, on
behalf of a class of themselves and others similarly
situated; JULIO BAEZ, on behalf of a class of themselves
and others similarly situated; ROBERT KAMMERER,
on behalf of a class of themselves and others
similarly situated

v.

ELAINE ALLEN; JOHN DOE; JANE ROE

WILLIAM PLANTIER; ROBERT CARDINALE;
NARSHIMA REDDY; ELAINE ALLEN,

Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 90-cv-03511)
(District Judge: Honorable Stephen M. Orlofsky)

Argued: January 14, 1999

Before: NYGAARD, ALITO, and LEWIS, Circuit Judges

(Opinion Filed: June 29, 1999)

        PETER VERNIERO
        Attorney General of New Jersey
        JOSEPH L. YANNOTTI
        Assistant Attorney General
        MARY C. JACOBSEN (ARGUED)
        Assistant Attorney General
        JAYROE WURST
        Deputy Attorney General
        WILLIAM P. FLAHIVE
        Deputy Attorney General

        Office of Attorney General
        CN 112
        R.J. Hughes Justice Complex
        Trenton, New Jersey 08106-0112

        Counsel for Appellants

        LAWRENCE S. LUSTBERG
        MARK A. BERMAN (ARGUED)

        Gibbons, Del Deo, Nolan, Grigginger
         & Vecchione
        One Riverfront Plaza
        Newark, New Jersey 07102-5497

        Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

Plaintiffs are a class of past, present, and future insulin-dependent diabetic inmates ("plaintiffs") who filed suit claiming that various corrections officials and employees were deliberately indifferent to the plaintiffs' serious medical needs, in violation of the Eighth Amendment. In this appeal, defendants challenge the District Court's refusal to grant summary judgment in their favor on the grounds of qualified immunity. For the reasons discussed below, we vacate the District Court's decision and remand for further proceedings in accordance with this opinion.

I.

In 1990, Darryl Rouse, an insulin-dependent diabetic then incarcerated at the Adult Diagnostic and Treatment Center ("ADTC"), a correctional facility in New Jersey, filed this S 1983 action. Named as defendants were: William Fauver, Commissioner of the New Jersey Department of Corrections; William Plantier, Acting Superintendent of the ADTC; Doctor Robert Cardinale, former Medical Director of ADTC; Doctor Narshima Reddy, former physician at ADTC; and Nurse Elaine Allen, former Chief of Nursing at ADTC. Rouse alleged that the defendants had subjected him to cruel and unusual punishment by failing to provide him with adequate medical care.

In 1994, Rouse amended his complaint and sought class certification, declaratory and injunctive relief for the class members, and monetary relief for present insulin-dependent diabetic inmates. See Supp. App. at 18-19 (Amended Complaint).1 The amended complaint alleged that

_____

1. In the amended complaint, plaintiffs also alleged that defendants had impermissibly discriminated against insulin-dependent diabetics because of their disability, in violation of the Americans with Disabilities Act, 42
U.S.C. S 12101 et seq. The District Court denied defendants' motion for summary judgment on the merits of this claim, see Rouse v. Plantier, 997 F. Supp. 575, 582 (D.N.J. 1998), but granted their motion on the basis of qualified immunity, Rouse v. Plantier, 987 F. Supp. 302, 317 (D.N.J. 1997). This issue is not on appeal.

"[t]he defendants have provided class members with medical care for their diabetes and diabetes-related conditions that is so uniformly and grossly inadequate as to constitute deliberate indifference to serious medical needs in violation of the Eighth Amendment to the United States Constitution." See Id. at 18.

In 1996, the District Court certified a class consisting of all former, present, and future insulin-dependent diabetics incarcerated at the ADTC, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2). For the purpose of classwide damages, the District Court also certified a class consisting of all former and present insulin-dependent diabetics incarcerated at the ADTC, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

Defendants moved for summary judgment on the merits of plaintiffs' claim and, alternatively, on the grounds of qualified immunity. In support of their respective arguments, both parties submitted the reports of medical experts. None of the experts disputed that plaintiffs suffer from insulin dependent diabetes mellitus, which all agree is a serious illness.

Plaintiffs proffered an expert report by Dr. Michael D. Cohen. See App. at 123-46. Basing his report primarily on the American Diabetes Association Clinical Practice Recommendations issued in 1995, Dr. Cohen explained that a characteristic of insulin-dependent diabetes is an abnormally high amount of sugar in the blood due to insulin deficiency, see id. at 123, and that a primary goal of disease management, therefore, is to lower the amount of sugar in the blood to normal or near-normal physiological levels. See Id. at 125. Achieving this goal, Dr. Cohen stated, requires diabetics to engage in a comprehensive daily care plan. See Id. at 123 ("Daily management requires close attention to medication, dietary intake and activity, with frequent monitoring of the blood sugar."). Failure to do so, Dr. Cohen asserted, can cause short-term complications, including excessive urination, constant thirst and hunger, weakness, confusion, dizziness, and seizures, as well as severe long-term problems, including blindness, amputation of feet and legs, renal failure, and nerve damage. See Id.

4

Dr. Cohen noted several components necessary for proper diabetes management. First, he said, diabetics require daily injections of insulin, the frequency of which depends upon the severity of the illness. See Id. at 125–26. Second, he asserted that in order to determine the amount of insulin required, diabetics must monitor their blood-sugar levels at least three to four times each day. See Id. at 126; see also id. at 155 (Report of Plaintiffs' Expert, Dr. Mathew J. Miller) ("Dr. Miller's report") (asserting that "all insulin-requiring diabetics should monitor their blood glucose levels on a daily basis" and that the ability to test one's blood-sugar level three to four times each day"is a reasonable standard to which we should aspire"). Third, he stated that, in addition to snacks and low-sugar sweets, diabetics must be given individualized diet plans tailored to their specific medical needs. See Id. at 127–30; see also Id. at 156 (Dr. Miller's Report) ("Appropriate food should be provided to each diabetic, the portions and composition individualized to needs, size, activity level and so forth."). Fourth, Dr. Cohen opined that diabetics must be educated about their disease and the steps necessary to maintain their health. See Id. at 130; see also id. at 155 (Dr. Miller's Report) ("[E]ducation is the sine qua non of good diabetic management."). Fifth, Dr. Cohen stated that timely and effective measures must be taken to prevent long-term and chronic complications, such as blindness and loss of limbs. See Id. at 131–39. For instance, Dr. Cohen noted that the American Diabetes Association recommends an "[a]nnual comprehensive dilated eye and vision examination by an opthamologist." See Id. at 134. And finally, he stated, clinical and follow-up evaluations must be conducted on a regular basis to monitor the progression of the diabetic's illness. See Id. at 139–46; id. at 139 ("Special primary care needs of diabetics include: comprehensive initial evaluation, regular followup, access to aggressive care for acute illnesses and injuries, attention to prevention of lung infections[,] and dental care.").

Dr. Cohen evaluated the level of care provided to the plaintiffs and opined that the defendants had failed to treat plaintiffs' illness adequately in all material respects. See Id. at 146 ("Essential components of necessary care for prisoners with diabetes are missing or inadequate at

5

ADTC."). Dr. Cohen faulted defendants for giving plaintiffs one insulin shot per day, despite suggestions from medical consultants that some of the plaintiffs required more than one daily injection. See Id. at 126. Dr. Cohen noted that plaintiffs were not provided the opportunity to monitor their blood-sugar levels on a daily basis and that, in some cases, blood sugar levels had been tested only 20 times per year. See Id. at 125-27. In addition, Dr. Cohen stated that, among other deficiencies, defendants had not provided plaintiffs with individualized meals and had not furnished diabetes-appropriate snacks or low-sugar sweets. See Id. at 128-30. Dr. Cohen noted further that, other than scheduling one education session several years ago, the defendants had not educated the plaintiffs about their illness. See Id. at 130. Last, Dr. Cohen asserted that defendants had no comprehensive plan for preventing long-term complications (e.g., inmates are not permitted to visit an eye doctor annually), see id. at 134-35, and that the defendants had not established an adequate evaluation and follow-up program to monitor the progression of the inmates' illness. See Id. at 139-46. He concluded:

> The care and treatment provided to prisoners with diabetes at ADTC is unacceptable by current standards of care. . . . As medical and nursing staff at ADTC are or ought to be aware of the current standards of care for management of diabetes and the harm that results from inadequate care and treatment, they have shown deliberate indifference to the pain and suffering of prisoners with diabetes.

App. at 124-25.

In response, defendants commissioned a report from Dr. William E. Ryan. Id. at 158-74. Dr. Ryan agreed with plaintiffs' expert that diabetes care must be "individualized," but he disputed most of Dr. Cohen's other assertions. See Id. at 163. Dr. Ryan noted that diabetics whose blood-sugar levels are "known" and "stable" do not require daily glucose testing. Id. Such testing, he asserted, is only "designed for acute and new diabetics." Id. He noted that the plaintiffs' blood-sugar levels generally had remained constant and within normal ranges, i.e, "between 125 and 140mg," but he recognized that "many of the

6

glucose values were in excess of 200mg, which is less than hoped for and certainly not ideal." Id. at 164. He placed the blame for the increased levels on the plaintiffs, who according to Dr. Ryan, had been "uninformed regarding their diabetic management when they entered the institution" and had "thwarted" the staff's efforts to control blood-sugar levels by not complying with their prescribed diets. Id. at 161, 164. Dr. Ryan further asserted that, because each patient at a minimum saw a doctor every three months, the care provided at ADTC was "entirely appropriate" under clinical recommendations. See Id. at 163 ("[R]egular visits (diabetic) should be scheduled for insulin treated patients at least quarterly . . . . More frequent contact may also be required if the patient is undergoing extensive insulin therapy . . . ."). Finally, Dr. Ryan cited several specific instances in which some of the plaintiffs had received timely and effective medical treatment. See Id. (explaining that Rouse had received prompt medical treatment when his blood-sugar level increased to an unacceptable level). In sum, he found "no evidence of deliberate indifference or insensitivity by the staff of ADTC in the care of their inmate diabetic patient population." Id. at 170.

Considering the experts' reports, the District Court granted summary judgment to Commissioner Fauver on the merits of the Eighth Amendment claim and dismissed as moot the summary judgment motion on the grounds of qualified immunity, concluding that plaintiffs had failed to demonstrate Fauver's culpability. See Rouse v. Plantier, 987 F. Supp. 302, 312, 315 n.13 (D.N.J. 1997) ("Rouse I"); id. at 312 ("Plaintiffs have not adequately responded to Defendants' contention that there is no evidence of Defendant Fauver's deliberate indifference."). With respect to the remaining defendants, however, the District Court denied summary judgment on both grounds. See Id. at 312, 315; Rouse v. Plantier, 997 F. Supp. 575, 580 (D.N.J. 1998) ("Rouse II").

The District Court first held that plaintiffs had demonstrated the existence of material factual issues on whether the plaintiffs as a class had received constitutionally adequate medical care and constitutionally

7

appropriate diabetes meals. See Rouse I, 987 F. Supp. at 308-12. The District Court next found that plaintiffs had adduced sufficient evidence for summary judgment purposes that the defendants had been aware of the risks of such inadequacy but had disregarded them. See Id. at 312. Turning to defendants' qualified immunity defense, the District Court held that the right at issue was clearly established and that the defendants had failed to demonstrate the reasonableness of their actions. See Id. at 313 n.10, 314-15; see also Rouse II, 997 F. Supp. at 579-80. Accordingly, it refused to grant summary judgment in their favor.

Defendants moved for reconsideration, and the District Court again rejected their qualified immunity defense. See Rouse II, 997 F. Supp. at 579-80. Defendants then took this appeal. They challenge only the District Court's determination that they are not entitled to qualified immunity on plaintiffs' Eighth Amendment claim. We have jurisdiction pursuant to the collateral order doctrine, see Mitchell v. Forsyth, 472 U.S. 511 (1985), and our review is plenary, see Larsen v. Senate of Cmwlth. of Pa., 154 F.3d 82, 87 (3d Cir. 1998), cert. denied, 119 S. Ct. 1037 (1999).

II.

The only issue in this appeal is whether the defendants are entitled to summary judgment based on qualified immunity. Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Acierno v. Cloutier, 40 F.3d 597, 616 (3d Cir. 1994) (en banc). In determining whether defendants are entitled to claim qualified immunity, we engage in a three-part inquiry: (1) whether the plaintiffs alleged a violation of their constitutional rights; (2) whether the right alleged to have been violated was clearly established in the

8

existing law at the time of the violation; and (3) whether a reasonable official knew or should have known that the alleged action violated the plaintiffs' rights.

A. We now turn to whether the plaintiffs alleged a violation of their constitutional rights. The Eighth Amendment prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." See Helling v. McKinney, 509 U.S. 25, 32 (1993). In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated. The Court articulated the standard to be used:

> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Id. at 106. Therefore, to succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious. Id. The defendants agree that insulin-dependent diabetes mellitus is a serious illness, and therefore only the former question is in issue here.

It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." As the Estelle Court noted: "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute `an unnecessary and wanton infliction of pain' or to be `repugnant to the conscience of mankind.' " Id. at 105; see also Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."); White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (emphasis omitted) ("[C]ertainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat

9

an illness."). "Deliberate indifference," therefore, requires "obduracy and wantonness," Whitley v. Albers, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. See Farmer v. Brennan, 511 U.S. 825, 842 (1994) (stating that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").

We have found "deliberate indifference" in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Durmer, 991 F.2d at 68 (citing Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988)). We also have found "deliberate indifference" to exist where the prison official persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury." Napoleon, 897 F.2d at 109-11 (holding that allegations of several instances of flawed medical treatment state a claim under Eighth Amendment).

In reaching its conclusion that the plaintiffs had alleged a violation of their Eighth Amendment rights, the District Court relied on the experts' reports submitted by the parties. The Court first found that genuine issues of material fact existed on whether the plaintiffs were "served a meal appropriate for their diabetic condition." Rouse I, 987 F. Supp. at 308. The Court noted the "numerous deficiencies" cited by plaintiffs' expert, including (1) lack of portion control, (2) unavailability of diabetes-appropriate meals, snacks, and low-sugar foods, and (3) failure to individualize diets. Id. Next, the Court found that genuine issues of material fact existed on whether the level of care provided to plaintiffs was constitutionally adequate. Id. at 310. Observing that some of the plaintiffs had their blood-sugar levels tested only a minimal number of times each year, the Court refused to conclude, as a matter of law, that defendants had provided appropriate medical care. Id. at 311-12. Noting several additional deficiencies, [2] the District

_____

2. Specifically, the District Court noted that genuine issues of fact existed on "1) the adequacy of care of Rouse and Brooks' feet; 2) the

Court concluded that "the risks of inadequate treatment were obvious to a reasonably well-trained doctor, nurse, or prison official" and that the defendants "were subjectively aware of the risks . . . but did not respond reasonably." Id. at 312.

On appeal, defendants contend that the evidence demonstrates that plaintiffs were provided with "extensive care" that did not "fall short of that required by the Eighth Amendment." Appellants' Br. at 41, 37. Specifically, defendants note that not "all" insulin-dependent diabetics require "routine daily blood-sugar testing." Id. at 33 (emphasis in original). They point to a lack of evidence indicating that the number of blood-sugar tests performed each year and the diabetic meals provided each patient were inappropriate for any of the particular plaintiffs' diabetic condition. See Id. at 34, 37 ("[P]laintiffs cannot demonstrate . . . that . . . the frequency of sugar testing for their particular medical condition so threatened their health [that it] subjected them to cruel and unusual punishment. . . . Plaintiffs [also] have presented absolutely no evidence that they cannot maintain their health based on [the] diets [provided].").

Plaintiffs, on the other hand, contend that the defendants' systemic failure to provide a constitutionally adequate level of care reflected a deliberate indifference to the plaintiffs' serious medical needs. See Appellees' Br. at 16. Such failure, they maintain, is evidenced by the defendants' refusal to provide a level of care even approximating that required by accepted medical practices. See Id. They further contend that "only an official who was deliberately indifferent to the serious medical needs of diabetic inmates could have participated in, and not objected to, the constitutionally deficient system of diabetic care at ADTC." Id. at 23-24.

_____

adequacy of the eye care provided, particularly, whether any preventive care is provided; 3) the adequacy of measures to prevent other relatively common diabetes-specific complications, such as kidney damage, nerve damage, or blood vessel damage; 4) the existence of and need for diabetic education." Rouse I, 987 F. Supp. at 311 (citations omitted).

Considering the principles enunciated in Estelle and its progeny, we find that the District Court erred in concluding on a wholesale basis that the plaintiffs alleged a violation of their Eighth Amendment rights. The experts' reports make clear that not all insulin-dependent diabetics require the same level of medical care. The reports show that there are at least two groups of insulin-dependent diabetic plaintiffs in this case. The first group consists of those insulin-dependent diabetics whose blood sugar levels consistently fluctuate to abnormal levels (i.e., the "unstable" plaintiffs). These diabetics require intensive medical treatment in order to regulate their blood sugar levels to normal or near normal physiological levels, which, as the experts' reports demonstrate, is the primary goal of diabetes management. The other group is comprised of those insulin-dependent diabetics whose blood sugar levels remain at or near normal physiological levels over time (i.e., the"stable" plaintiffs). These individuals have already achieved the primary goal of diabetes management and therefore do not require the same level of intensive medical treatment as their unstable counterparts. Consequently, it is possible that conduct that violates the Eighth Amendment rights of the unstable plaintiffs may not violate the constitutional rights of the stable plaintiffs.

In light of the diverse medical needs of, and the different level of care owed to, each group of plaintiffs, the District Court erred in holding that all members of the plaintiff class alleged a violation of their Eighth Amendment rights. Based on the evidence in the summary judgment record, there may be one or more subgroups of plaintiffs as to whom particular aspects of the care allegedly provided was not consistent with Eighth Amendment requirements and other subgroups as to whom particular aspects of the care was constitutionally adequate. On remand, therefore, the Court should address the specific needs of each such group, considering, for instance, the appropriate amount of glucose testing, the need for a special diet, and the plaintiffs' general compliance with their medical appointments and prescribed dietary plans. Then, the District Court should consider the appropriate level of care due under the Eighth Amendment. Only after the latter determinations are made should the District Court

12

determine whether the defendants' actions with respect to each of these matters and with respect to each relevant subgroup of plaintiffs were consistent with the requisite level of care owed under the Eighth Amendment at the times in question.

We note that this case presents an unusual situation-- an Eighth Amendment class action for damages in which the defendants asserted the defense of qualified immunity -- and that prior circuit precedent did not provide the District Court with guidance as to how the defendant's qualified immunity claim should be handled in this context. The constitutional right asserted by the plaintiff class -- the Eighth Amendment right of a prisoner to be free from deliberate indifference to his or her serious medical needs -- is one that obviously varies depending on the medical needs of the particular prisoner. Yet here, the plaintiff class is a medically diverse group. Moreover, the violations for which damages are sought allegedly occurred over a span of years, during which the relevant medical standards may have changed. And, as we will discuss below, the defendants also vary, including both a lay supervisor and medical professionals. If this case ultimately goes forward as a class action for purposes of damages,3 the scope of the qualified immunity afforded each individual defendant should not be any different than it would be if that defendant were instead faced with separate damages actions filed on behalf of each member of the plaintiff class. Thus, if an individual damages actions by plaintiff P1 against defendant D1 would not survive a motion for summary judgment based on qualified immunity, either because D1's alleged conduct did not constitute an Eighth Amendment violation as to P1 or because the illegality of D1's conduct was not clearly established at the time in question, then in the class action context D1 should likewise be free from the burden of going to trial on the claims of P1 and all other similarly situated members of the plaintiff class. For these reasons, we remand to the District Court for it to consider the individual needs of each relevant subgroup of plaintiffs.

_____

3. The question of class certification for purposes of damages is not before us, and we express no opinion on this issue.

B. In light of the fact that we are remanding this case to the District Court to determine in the first instance whether relevant subclasses of plaintiffs have alleged violations of their Eighth Amendment rights, it would be premature for us to address the question whether, if such violations are ultimately found to have been alleged, the illegality of the defendants' conduct was clearly established. However, we emphasize that the District Court on remand should not only address the situation of each relevant category of plaintiffs, but it should also analyze separately the situation of each of the defendants who is sued for damages in an individual capacity.

As previously noted, when a defendant asserts the defense of qualified immunity, it is necessary to determine whether a reasonable official in the position of that defendant would have known that his or her actions were unconstitutional in light of the clearly established law and the information the official possessed. See Anderson v. Creighton, 483 U.S. 635, 641 (1987) (determining whether it was objectively reasonable for an official to believe that a particular search was supported by probable cause requires consideration of the information possessed by the searching officials). In making this determination in this case, the District Court went astray in two respects.

First, the District Court should have addressed the specific conduct of each of the individual defendants in determining whether that particular defendant acted in an "objectively unreasonable" manner. In Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996), we observed that the determination of whether a government official has acted in an objectively reasonable manner demands a highly individualized inquiry. We stated:

> [T]he question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights . . . . Thus, crucial to the resolution of any assertion of qualified immunity is a careful examination of the record . . . to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant . . . .

14

Id. at 121-22 (emphasis in original); see also Reitz v. County of Bucks, 125 F.3d 139, 147 (3d Cir. 1997) (stating that qualified immunity analysis "requires application of the law to the particular conduct at issue"); Bakalis v. Golembeski, 35 F.3d 318, 326-27 (7th Cir. 1994) ("Qualified immunity is an individual defense available to each individual defendant in his individual capacity."); Waldrop v. Evans, 871 F.2d 1030, 1034 (11th Cir. 1989) (evaluating challenged conduct individually because deliberate indifference standard is fact-specific).

In the present case, the District Court determined, without an individualized explanation, that all of the defendants (except Commissioner Fauver) had acted in an objectively unreasonable manner. The District Court simply stated that "[d]efendants knew what the appropriate level of care for a diabetic was and knew that the level of care provided was far short of it." Rouse I, 987 F. Supp. at 315. Nowhere in the District Court's opinion did it analyze the specific actions of each of the individual defendants. Nor is there any evidence in the record that allows us to make this determination on appeal.

The need for an individualized analysis is apparent in this case because one of the individual defendants, the acting superintendent, is a lay administrative official. It is well-settled that liability under S 1983 may not be based on the doctrine of respondeat superior, see Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993), and there is nothing in the record or the District Court's opinion setting forth the basis for the conclusion that the acting superintendent should have known that his conduct constituted an Eighth Amendment violation.

Second, the District Court should have considered the reasonableness of each of the defendants' actions with respect to each of the relevant categories of plaintiffs. The District Court stated:

> [K]nowing that glucose is normally tested at the very least once a day for patients like Plaintiffs, Defendants could not have reasonably believed that glucose testing in many cases less than twenty times a year for these particular Plaintiffs was reasonable medical care . . . .

15

> Defendants could not . . . have reasonably thought that
> Plaintiffs were among the group of insulin-dependent
> diabetics who could tolerate such infrequent testing,
> given . . . the substantial evidence of serious
> fluctuations in the glucose levels of some of the
> plaintiffs . . . .

Rouse I, 987 F. Supp. at 315 (emphasis added) (emphasis in original omitted). As that paragraph demonstrates, the District Court recognized that not all of the plaintiffs are similarly situated but proceeded nevertheless to consider the plaintiffs' claim on a classwide basis. As discussed earlier, this analysis may have subjected some of the defendants to the possibility of personal liability even though the care they provided may have been constitutionally sufficient.

Therefore, the District Court's determination that all of the defendants failed to act in an objectively reasonable manner in the care that they provided to all of the plaintiffs cannot stand. Accordingly, we remand to the District Court for it to determine whether each of the individual defendants acted in an objectively reasonable manner with respect to the particular needs of each relevant group of plaintiffs.

III.

For these reasons, we vacate the decision of the District Court and remand for the Court to reevaluate the qualified immunity issue in accordance with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

16