**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1586
_____

DANTE BURTON,
                                        Appellant
v.

RHU SGT. CLINGER; MARY ANDERSON,
PSYCHOLOGICAL SERVICE SPECIALIST
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1-19-cv-00222)
Magistrate Judge Richard A. Lanzillo (by consent)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on March 6, 2023

Before: SHWARTZ, BIBAS, and PHIPPS, *Circuit Judges*

(Opinion filed: July 7, 2023)
_____

OPINION*
_____

BIBAS, *Circuit Judge*.

Summary judgment is appropriate only when no reasonable jury could find for the non-moving party. Here, that standard was not met. So we will vacate and remand.

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

# I. BACKGROUND

Dante Burton was an inmate in solitary confinement. He says that early one morning, Sergeant John Clinger made a derogatory sexual comment to him. That remark caused him to have suicidal thoughts. Burton told a guard that he was considering committing suicide and needed to talk to "the psych," Mary Beth Anderson. ECF No. 1-2 ¶10. Just before 9 a.m., the guard relayed that information to Anderson. Anderson said she would see Burton once she was done with "PRC." ¶12. (Though "PRC" is undefined, it likely refers to the prison's Program Review Committee.)

Five hours later, the guard "found [Burton] hanging" in his cell. ¶21. Anderson had not yet gone to see him. Burton was still breathing, so the guard took him to the medical ward. There, Burton continued to harm himself by banging his head against the wall. Anderson arrived about ninety minutes later. She explained "that PRC [had] not end[ed] until" that afternoon. ¶24.

About a year later, Burton sued. He brought a state-law sexual-harassment claim against Clinger. And he sued Anderson under 42 U.S.C. § 1983. He says Anderson was deliberately indifferent to his serious medical need, thus violating his Eighth Amendment right against cruel and unusual punishment.

The District Court granted summary judgment for Anderson. It found no dispute over whether Anderson was deliberately indifferent. Having granted summary judgment on the only federal claim, it remanded the sexual-harassment claim to state court.

Burton appeals. We have appellate jurisdiction under 28 U.S.C. § 1291 and review a grant of summary judgment de novo. *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 141 (3d Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the non-moving party, Burton, and draw all reasonable inferences in his favor. *See Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## II. SUMMARY JUDGMENT WAS IMPROPER

To start, we identify the applicable deliberate-indifference test. Anderson says Burton must show that she was deliberately indifferent to Burton's risk of suicide specifically rather than his serious medical needs generally. *Compare Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017), *with Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Not so. "While … a particular vulnerability to suicide qualifies as a serious medical need, a vulnerability to suicide is not the sole need on which [Burton's] claim [is] focused. Rather, [Burton] [seeks] to hold [Anderson] accountable for failing to meet [his] serious needs for mental healthcare." *Palakovic*, 854 F.3d at 227 (citation omitted). The District Court correctly recognized that Burton was advancing this "more general claim." *Id.*

The test for this claim requires that (1) Anderson was "deliberately indifferent to [Burton's] medical needs," and (2) "those needs were [objectively] serious." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (internal quotation marks omitted). An official is "deliberately indifferent" when she "knows of" and "recklessly disregard[s]" an

3

"excessive risk to [the] inmate['s] health." *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). Burton bears the burden of proving Anderson's deliberate indifference.

This case turns on Anderson's alleged indifference. She concedes that Burton's needs were objectively serious and that she knew about them. And though she suggests that Burton did not suffer serious harm from her delay, such harm is not an element of a deliberate-indifference claim. *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012), *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n.7 (3d Cir. 2020). Her main argument is that no reasonable jury could find her deliberately indifferent because her demanding work schedule caused her delay.

Yet a busy schedule is not enough. "We have … found deliberate indifference in situations where necessary medical treatment is delayed for non-medical reasons." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (internal quotation marks omitted). "All that is needed [for Burton's claim to survive summary judgment] is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay … was motivated by non-medical factors." *Pearson*, 850 F.3d at 537.

Here, the evidence permits that finding. In his affidavit, Burton said Anderson told him that she was "going to pull [him] out of [his] cell," but "PRC did not end until" that afternoon. ECF No. 48-1 at ¶18. He also said that the guard who contacted Anderson told him that Anderson would come get him "when PRC was over." *Id.* ¶¶12, 18. And he has documents to back that up. *See* ECF Nos. 41-4, 48-4. He also swore that the PRC meeting was

4

held just "75 to 80 feet away from [his] cell," so Anderson "could have easily left the PRC meeting" to help him. ECF No. 48-1 at ¶¶22, 25.

In her affidavit, Anderson vaguely countered that "[a]t that time" (seemingly referring to the day of the incident), she "had multiple responsibilities including required attendance at various committees and meetings, as well as meeting with inmates housed in different units, that required [her] to be in different parts of the facility." ECF No. 41-5 ¶4. That explanation seems only to confirm that at least part of the delay was due to meetings, not medicine.

True, these meetings were "legitimate" parts of Anderson's job. Dissent at 2–3. But an official who fails to respond to an emergency is not immune from liability just because she was doing other job duties. *See Natale*, 318 F.3d at 583 ("A reasonable jury could find that" a nurse's adhering to the prison's usual medical policy during an emergency "constituted the delay of medical treatment for non-medical reasons."). So a reasonable jury could conclude that she delayed care for a non-medical reason.

Plus, Anderson knew that Burton had a history of self-harm, and there is no evidence that Burton had ever cried wolf. Thus, "a factfinder could infer that [Anderson] knew that the threat to [Burton's] safety was imminent." *Hamilton v. Leavy*, 117 F.3d 742, 747 (3d Cir. 1997). Despite this potentially imminent risk, there is no evidence that Anderson radioed other personnel with instructions, as she said she usually did in situations like these. ECF No. 41-5 ¶5.

5

"[B]ased on the circumstantial evidence offered by [Burton,] which demonstrates the existence of an obvious risk, [Anderson's] decision to consciously disregard that risk …, and [Burton's] resulting injuries[,] … we conclude that summary judgment was improper as to [Anderson]." *Hamilton*, 117 F.3d at 748. So we will vacate the District Court's grant of summary judgment and remand for further proceedings.

Finally, we will also vacate the District Court's remand of the sexual-harassment claim. It declined to exercise supplemental jurisdiction over that claim once it resolved the federal claim. Because we have vacated its decision on the federal claim, we will give the District Court the opportunity to reconsider exercising jurisdiction over Burton's state-law claim. *See United States v. Omnicare, Inc.*, 903 F.3d 78, 94 (3d Cir. 2018).

PHIPPS, *Circuit Judge*, dissenting.

In vacating the District Court's grant of summary judgment, the Majority Opinion applies the non-medical-reason test and concludes that a genuine dispute of material fact exists. That dispute concerns Psychology Services Specialist Mary Anderson, whose authority over suicidal inmate care was limited to assessing inmates and making referrals and recommendations for follow-up care. Specifically, the triable question identified by the Majority Opinion asks whether Anderson was deliberately indifferent for not leaving her other prison job duties to attend immediately to Dante Burton's request to see her.

For the non-medical-reason test to apply, there must first be "no presumption that the defendant acted properly." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017). Such a presumption applies when a prison employee delays medical care for a medical reason. *See id.* But prisons do more than provide medical services, and even prison employees responsible for treating inmates' mental health perform other important job functions. Thus, the denial of medical care for attending to another legitimate job function merits the same presumption, and the Supreme Court has said as much: "The inquiry into [deliberate indifference] also would be an appropriate vehicle to consider arguments regarding the realities of prison administration." *Helling v. McKinney*, 509 U.S. 25, 37 (1993); *see also Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their

1

expert judgment in such matters." (citations and quotations omitted)).  Accordingly, the specialized non-medical-reason test – as one of several methods for proving deliberate indifference, *see Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) – does not apply when a prison employee delays medical care in the performance of another legitimate job function.  Rather, the non-medical-reason test applies only when the prison employee is not conflicted between competing legitimate duties and delays care for a non-medical reason.  *See, e.g.*, *Pearson*, 850 F.3d at 537 (concluding that a triable issue existed as to whether a nurse who forced "a screaming patient to crawl to a wheelchair" was a delay for a non-medical reason); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582–83 (3d Cir. 2003) (concluding that a triable issue existed as to whether a 72-hour delay in providing insulin to a diabetic was for a non-medical reason); *Durmer v. O'Carroll*, 991 F.2d 64, 68–69 (3d Cir. 1993) (concluding that a triable issue existed as to whether a doctor's delay in prescribing physical therapy for a stroke victim was for a non-medical reason).

Without the applicability of the non-medical-reason test, a prison employee's mental state must be assessed more generally to determine whether the employee delayed medical care due to "obduracy and wantonness."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Pearson*, 850 F.3d at 539.  Under that standard, the summary judgment record in this case does not allow a reasonable jury to find that Anderson acted with deliberate indifference.  The choice she faced was between (a) responding to Burton's request within the scope of her job duties with respect to inmate care at a time when he was otherwise under close watch and in protective care and (b) attending to other undisputedly legitimate prison obligations.  Anderson chose the latter, but the record does not contain evidence that her decision to perform other legitimate job duties was obdurate

2

and wanton: Burton was in restricted housing, he was under close watch, and Anderson did not know that his condition was worsening. Thus, without sufficient evidence to make a showing of obduracy and wantonness, the District Court correctly rejected Burton's cruel-and-unusual-punishment claim against Anderson. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On that basis, I respectfully dissent and would affirm the judgment of the District Court.