CLD-187                                                        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-1612
_____

DAVID ROSARIO,
                                    Appellant

v.

FORMER SECRETARY JOHN E. WETZEL; SECRETARY, DR. LAUREL HARRY;
DEPUTY SECRETARY TAMMY FERGUSON; DEPUTY SECRETARY TABB
BICKLE; BRIAN SCHNEIDER, LPM; DIRECTOR BENNING, Bureau of Healthcare;
DR. ANDREW NEWTON; JOHN DOE
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:23-cv-00966)
Magistrate Judge:  Honorable Patricia L. Dodge
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 24, 2025

Before:  KRAUSE, PHIPPS, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed August 26, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

David Rosario, a Pennsylvania inmate, appeals *pro se* and *in forma pauperis* from the District Court's grant of summary judgment in favor of current and former officials with the Commonwealth's Department of Corrections. We will affirm.

I.

Rosario suffers from schizophrenia and other mental health disorders. He also has a history of violent outbursts and other disciplinary issues while incarcerated. In March 2020, for instance, Rosario attacked a prison guard at State Correctional Institution ("SCI") Mahanoy, later pleading guilty to aggravated assault. That episode led prison officials to initiate proceedings to have him added to the Restricted Release List, a mechanism for managing prisoners who pose significant threats to operational security. Rosario was transferred to SCI Camp Hill soon thereafter, where he was placed in the Restricted Housing Unit on administrative custody status. He was written up for throwing food and an unknown liquid on a corrections officer within a year of arriving at the second prison, and he seriously injured another guard there in July 2021 by repeatedly punching him in the face, resulting in a new aggravated assault conviction and an additional state sentence of 10-to-20 years' imprisonment.

Department personnel approved Rosario's placement on the Restricted Release List in June 2021 based upon his history of assaulting prison staff and other inmates.

2

That designation held significant ramifications for Rosario: His contact with family and fellow prisoners was curtailed, he could not get married, he was deemed ineligible for certain educational and vocational programs, his use of prison showers and hygiene products was limited, and his access to legal materials and exercise facilities was either cut back or eliminated altogether. These restrictions were eased somewhat upon Rosario's admission to an Intensive Management Unit program designed to facilitate the reintegration of inmates on the Restricted Release List into the general population. Rosario was released from the Restricted Housing Unit in January 2025.

Rosario believes that prison officials conspired to manipulate his mental illness with the goal of seeing him punished with solitary confinement. In his telling, an unknown medical provider at SCI Mahanoy inexplicably discontinued one or more of his medications in January 2020, which resulted in his relocation from a housing unit designed for prisoners with psychological problems into the general population. He candidly acknowledges that he did not adjust well to these changes, hence the first altercation with a prison guard that prompted his transfer to SCI Camp Hill and all that followed.

Rosario initiated this lawsuit in June 2023 by filing a complaint in the United States District Court for the Western District of Pennsylvania under 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et*

3

*seq.*, against the current and former Secretaries of Corrections, their deputies, and other Department employees responsible for inmate medical care. The parties consented to the jurisdiction of a United States Magistrate Judge. Rosario then filed an amended complaint in which he alleges that defendants were deliberately indifferent to the risk of harm he faced in prolonged solitary confinement and denied him adequate care for his mental health issues in violation of the Eighth Amendment, and that they violated his Fourteenth Amendment right to due process by denying him meaningful review of his placement on the Restricted Release List.

Defendants moved for summary judgment at the close of discovery, and the District Court granted their motion. The court concluded that Department officials had good cause to restrict Rosario's movements within the prison system given his history of violence toward staff and inmates. That fact, combined with periodic reassessments of Rosario's status by the Program Review Committee—several meetings of which he refused to attend—and his participation in programming that made him eligible for less-restrictive housing conditions, belied his deliberate indifference and due process claims. As for his denial-of-care claim, the court determined that he has had continuous access to medical services within the Restricted Housing Unit, including psychiatric and psychological specialists, as demonstrated by his own admissions and record medical evidence showing his evaluation on at least ten occasions in less than two years. Lastly,

4

the court reasoned that Rosario's ADA claim against the individual defendants failed as a matter of law because that statute creates no cause of action for damages, and any request for injunctive relief was doomed because, as noted, defendants were justified in placing Rosario in restricted housing, provided adequate medical care, and did not discriminate against him due to his disability. Rosario appeals and moves for the appointment of counsel.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment ruling. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may summarily affirm if the appeal presents no substantial question. See 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6.

## III.

Rosario challenges various aspects of the District Court's summary judgment ruling. He asserts that the court erred (1) in failing to account for his mental illness when

assessing the conditions of his confinement; (2) in finding his placement in segregated housing to be justified by legitimate penological interests; (3) in concluding that periodic review by the Program Review Committee comported with due process; and (4) in granting defendants' motion as to his ADA claim, "claiming [he] did not classify as a person with a disability." See C.A. Doc. 17 at 1-4. We disagree on all fronts.

Rosario relies on two of our recent precedents in arguing that the District Court erroneously assessed his claims under standards applicable to inmates who do not suffer from serious mental illnesses. See id. at 1-2 (citing Clark v. Coupe, 55 F.4th 167, 179-80 (3d Cir. 2022); Palakovic v. Wetzel, 854 F.3d 209, 226 (3d Cir. 2017)). He is mistaken. Although those decisions articulate important principles that must be considered when assessing Eighth Amendment conditions-of-confinement claims brought by or on behalf of mentally ill inmates, they do so in the context of motions to dismiss, not motions for summary judgment. The allegations in Rosario's amended complaint were sufficient to survive dismissal at the pleading stage, but the District Court correctly determined that there is no genuine dispute of material fact warranting a trial on his claims. Having independently reviewed the summary judgment record, we are satisfied that Rosario's mental illness was front of mind in the District Court's analysis.

Courts apply a two-pronged test to determine whether prison officials violated the Eighth Amendment: "(1) the deprivation must be 'objectively, sufficiently serious; a

prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.'" Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)) (internal citations and quotation marks omitted). It is well-settled that placement in "[s]egregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman or totally without penological justification." See Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), superseded by statute on other grounds as stated in Nyhuis v. Reno, 204 F.3d 65, 71 n.7 (3d Cir. 2000); see also Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997). One such justification is "the risk that [the prisoner] specifically poses." See Porter, 974 F.3d at 446. The restrictions placed upon Rosario were amply justified on the record before us.

Rosario's history of violent behavior while in prison is undisputed. In addition to assaulting guards at SCI Mahanoy in March 2020 and at SCI Camp Hill in July 2021, he has been sanctioned repeatedly for fighting with other inmates, threatening prison staff, refusing orders, and destroying property—and that is only counting misconduct that occurred *after* he was placed in the Restricted Housing Unit. See ECF 80-6 at 1-4 (1/18/24 Misconduct Log). Rosario was a constant threat to those around him. Prison

officials thus had good reason to place him in segregated detention and to keep him there until he was able to control his antisocial behavior.

Rosario would have us believe that the Department simply locked him up and threw away the key, but the record shows otherwise. Prison officials regularly reviewed his security classification (even when he refused to engage in the process) and quickly approved his participation in a six-tiered program that rewarded good behavior with greater privileges. Rosario already had advanced to Phase 3 of the program by the time discovery closed in this matter in the spring of 2024, and he was released from the Restricted Housing Unit half-a-year later. Under the circumstances, we agree with the District Court that the time Rosario spent in restrictive custody, and the procedures by which he progressed out of it, comported with due process. See Griffin, 112 F.3d at 708 (approving earlier iteration of same procedures that exposed inmates to conditions of administrative custody "for a substantial period of time").

We also agree that Appellees did not deny Rosario adequate health care. To succeed on a claim that prison officials deprived an inmate of necessary medical care, a plaintiff must prove that the inmate had a serious medical need and that the defendants were deliberately indifferent to those needs. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Rosario's diagnosed mental illnesses unquestionably are serious, as is his need for professional help. See

8

Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023-24 (3d Cir. 1991) (quoting Partridge v. Two Unknown Police Officers, 791 F.2d 1182, 1187 (5th Cir. 1986)). But the record reveals that the Department provided uninterrupted treatment throughout his time in the Restricted Housing Unit. Psychiatric specialists made rounds through the unit six days a week, personally contacted Rosario to offer services every thirty days, and were available upon request at any time. Although he occasionally refused care and failed to follow the drug regimen doctors prescribed to treat his condition, medical staff evaluated him closely at least a dozen times between February 2020 and March 2024 and modified his medication schedule as needed. They also offered him daily supportive counseling whenever he was admitted to a psychiatric observation cell. Rosario may not be satisfied with the level care he received in a prison environment, but it hardly amounts to deliberate indifference.

Finally, the District Court did not err in granting summary judgment on Rosario's ADA claim. To the extent he suggests that the court resolved that claim against him on the ground that he did not have a disability, he misunderstands the court's rationale. The court correctly concluded that the claim fails because there is no evidence that Rosario was placed on the Restricted Release List or was moved to the Restricted Housing Unit *because of* his disability. Those decisions plainly were attributable to his "long assaultive history towards staff and inmates" and his "unpredictable patterns of violence." See ECF

9

Doc. 80-13 at 6, 15, 16. No reasonable jury faced with this record could conclude that the Department was motivated by discriminatory animus, rather than legitimate security interests.

Because Rosario's appeal does not present a substantial question, we deny his motion for counsel and will affirm the judgment of the District Court.