903 F.2d 274
 BROWN, Richard W.
v.
BOROUGH OF CHAMBERSBURG, Pryor, Richard; Grabowski,
Matthew; North, Richard; County of Franklin;
Seep, Michael; Rauser, Russell and
Burns, David.
Appeal of Richard W. BROWN, and his attorney, Robert W.
Henderson, Esquire.
 No. 89-5884.
 United States Court of Appeals,
Third Circuit.
 Argued April 2, 1990.
Decided May 21, 1990.
As Amended May 29, 1990.
 
 Robert W. Henderson (argued), Frederick, Md., for appellants.
 Richard G. Fine, Fine & Wyatt, P.C., Scranton, Pa., for Borough of Chambersburg, Matthew Grabowski, Richard Pryor and Richard North.
 Stephen L. Grose (argued), Keefer, Wood, Allen & Rahal, Harrisburg, Pa., for County of Franklin, Michael Seep, Russell Rauser and David Burns, appellees.
 Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Richard Brown (plaintiff) and his attorney, Robert Henderson (attorney), appeal separate awards of attorneys' fees against each of them and in favor of defendants. The district court allowed such fees pursuant to 42 U.S.C. Sec. 1988 (1982). We have jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 
 2
 Plaintiff brought this Sec. 1983 action against six individual defendants, the Borough of Chambersburg and the County of Franklin, alleging violations of his civil rights under the fourth and fourteenth amendments to the Constitution. See 42 U.S.C. Sec. 1983 (1982). Prior to trial, plaintiff voluntarily dismissed the Borough of Chambersburg. The district court then conducted a two-day jury trial. After the parties had rested, the district court granted a directed verdict in favor of the County of Franklin. However, it denied the motions of the individual defendants for directed verdicts on the ground that there was "direct conflict in the oral testimony at trial." Subsequently, the jury returned a verdict in favor of the individual defendants.
 
 
 3
 The attorneys' fee awards here appealed were based on the district court's determination that plaintiff's Sec. 1983 action, alleging defendants' mistreatment of plaintiff during and after his arrest for public drunkenness, was frivolous.
 
 
 4
 As a preliminary matter, we note that while the district court's memorandum opinion stated that it was appropriate to sanction appellants under Fed.R.Civ.P. 11, the court did not rely on that rule as authority for imposing sanctions. Rather, the order appealed from awarded attorneys' fees pursuant to Sec. 1988 only. Therefore, we will address only that statutory ground for sanctions.
 
 
 5
 * We turn first to the attorney's contention that Sec. 1988 applies only to parties and does not authorize the award of attorneys' fees against him. Since the contention is a legal one our review is plenary.
 
 
 6
 Interpretation of Sec. 1988 must begin with its language, which provides in pertinent part:
 
 
 7
 In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.
 
 
 8
 The Supreme Court has commented on the fact that Sec. 1988 makes no "mention of attorney liability for costs and fees." Roadway Express, Inc. v. Piper, 447 U.S. 752, 761, 100 S.Ct. 2455, 2461, 65 L.Ed.2d 488 (1980). In Roadway, the Court found convincing support in the legislative history for the view that the statute permits recovery only from a party, not from his counsel. 447 U.S. at 761 n. 9, 100 S.Ct. at 2461 n. 9.
 
 
 9
 The Court focused on the Senate Report accompanying the statute which states that "a party [who brings an action to vindicate fundamental rights], if unsuccessful, could be assessed his opponent's fee.... This bill thus deters frivolous suits by authorizing an award of attorneys' fees against a party...." S.Rep. No. 94-1011, 94th Cong., 2d Sess. 5, reprinted in 1976 U.S.Code Cong. & Admin.News 5908, 5912 (emphasis added).
 
 
 10
 The law in other circuits is consistent with the statements made by the Supreme Court. See Smith v. Detroit Fed'n of Teachers, Local 231, 829 F.2d 1370, 1374 n. 1 (6th Cir.1987); Hamer v. County of Lake, 819 F.2d 1362 (7th Cir.1987) (remanded to allow district court to consider other theories of liability); Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986) (dictum), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); Durrett v. Jenkins Brickyard, Inc., 678 F.2d 911, 915 (11th Cir.1982) (while reversing district court's failure to assess fees against counsel under court's inherent power, court observed that district court correctly determined that 42 U.S.C. Sec. 2000e-5(k) of Title VII of the Civil Rights Act of 1964 did not authorize fees against counsel); see also Davidson v. Allis-Chalmers Corp., 567 F.Supp. 1532, 1537-38 (W.D.Mo.1983).
 
 
 11
 We conclude that Sec. 1988 does not authorize the award of attorneys' fees against plaintiff's attorney. We will, therefore, reverse that portion of the district court's award that assessed fees against plaintiff's attorney under Sec. 1988.
 
 II
 
 12
 We next consider the appropriateness of the district court's order assessing fees against plaintiff. A plaintiff may be liable for attorneys' fees under Sec. 1988 when "a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly becomes so." Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978);[1] see also Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). A plaintiff's subjective bad faith is not a necessary prerequisite to an award of fees against him. Hughes, 449 U.S. at 14, 101 S.Ct. at 178; Christiansburg, 434 U.S. at 421, 98 S.Ct. at 700. Implicit in this approach is the premise that plaintiff knew or should have known the legal or evidentiary deficiencies of his claim. See Werch v. City of Berlin, 673 F.2d 192, 195 (7th Cir.1982); cf. Tarter v. Raybuck, 742 F.2d 977 (6th Cir.1984) (no fees assessed where case involved unsettled area of law), cert. denied, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985); Dooley v. Reiss, 736 F.2d 1392 (9th Cir.) (no fees assessed where losing claims presented difficult issues not previously resolved at appellate level), cert. denied, 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984).
 
 
 13
 With the foregoing principles in mind, we review the district court's award of attorneys' fees under Sec. 1988 pursuant to an abuse of discretion standard. Rode v. Dellarciprete, 892 F.2d 1177, 1182-83 (3d Cir.1990); Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897, 909 n. 21 (3d Cir.1985); 42 U.S.C. Sec. 1988 ("the court in its discretion," may award attorneys' fees) (emphasis added). Factual findings are subject to the clearly erroneous standard. Rode, 892 F.2d at 1182-83; Institutionalized Juveniles, 758 F.2d at 909 n. 21.
 
 
 14
 Plaintiff claimed that the police used excessive force in arresting him for public drunkenness and that the physician and corrections officers of the Franklin County Prison were deliberately indifferent to his serious medical needs.[2] We will consider these two theories of liability separately.
 
 EXCESSIVE FORCE CLAIM
 
 15
 Force used during arrest may be so excessive as to support a cause of action under Sec. 1983 and the fourth and fourteenth amendments. See Graham v. Connor, --- U.S. ----, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Plaintiff testified at trial that, after a night of celebrating, he was awakened and pulled from his apartment by Borough police officers. He also testified that during the arrest one of the officers pulled his feet out from under him and dragged him down a flight of stairs. This act, plaintiff asserted, fractured his ribs. The parties appear to agree that it might constitute excessive force if police injured plaintiff's ribs by pulling his feet out from under him and dragging him down a flight of stairs. We must therefore turn to the evidence.
 
 
 16
 In deciding the fee applications, the district court found that during the arrest the "two police officers supported and assisted the plaintiff, and led him down the flight of stairs to the ground floor and the police van." While this factual finding is not clearly erroneous, we must determine whether the court abused its discretion in finding it frivolous to assert that the officers mistreated plaintiff in the manner he claims.
 
 
 17
 The district court found that only plaintiff's testimony supported his version of the arrest and that this testimony was contradicted by every other witness, including disinterested witnesses. While plaintiff forcefully suggests that civil rights plaintiffs confronted with abusive police officers will often find themselves without corroborating witnesses, the district court noted that plaintiff's testimony was considerably suspect, given his drunken condition and his admitted inability to remember appearing before a district justice for arraignment. The court stated that the absence of any support for plaintiff's version of events was "apparent almost from the beginning" and was certainly knowable as discovery progressed. Thus, we cannot conclude on this record that the district court abused its discretion in finding plaintiff's claim based on the use of excessive force frivolous.
 
 DELIBERATE INDIFFERENCE CLAIM
 
 18
 We first consider plaintiff's claim against the prison doctor, alleging his deliberate indifference to plaintiff's serious medical needs in violation of the fourteenth amendment. Deliberate indifference to a prisoner's serious medical needs can give rise to such a constitutional violation; however, mere medical malpractice will not. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).
 
 
 19
 Although the fourteenth amendment governs, since the events alleged occurred while plaintiff was a pretrial detainee, see Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979), this court has stated that the "deliberate indifference" standard of Estelle v. Gamble must be met in the provision of medical care to pretrial detainees. See Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 n. 31 (3d Cir.1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights. See Youngberg v. Romeo, 457 U.S. 307, 322-23, 102 S.Ct. 2452, 2461-62, 73 L.Ed.2d 28 (1982). Plaintiff testified that when he went to see the prison physician complaining of pain in his ribs, the doctor conducted only a visual examination of his upper chest and did not press on his ribs, thereby failing to discover the full extent of his injuries. The testimony of both plaintiff and the doctor revealed that the doctor concluded that plaintiff had only a bruise. Upon release from custody, plaintiff obtained medical treatment at a local hospital where two ribs were found to be broken.
 
 
 20
 Even if we accept as credible plaintiff's testimony that the doctor did not touch the injured area, we could not characterize the doctor's conclusion based on a visual examination that plaintiff had only a bruise as a failure to exercise medical judgment. The most that can be said of plaintiff's claim is that it asserts the doctor's exercise of deficient professional judgment. We therefore conclude that the district court did not abuse its discretion in finding that plaintiff's constitutional claim against the prison physician was frivolous.
 
 
 21
 We are not confronted with a case where the evidence is reasonably debatable as to whether plaintiff's claim rises to the level of a fourteenth amendment violation. Nor is this a case where plaintiff argues that he presented such facts to his attorney and then relied in good faith on his counsel's advice that he had a constitutional cause of action. Cf. Hughes v. Repko, 578 F.2d 483 (3d Cir.1978), modified on other grounds, Inmates of Allegheny County Jail v. Pierce, 716 F.2d 177 (3d Cir.1983).
 
 
 22
 Plaintiff also asserted a claim of deliberate indifference to his serious medical needs on the part of two corrections officers who were named in the action. He testified that subsequent to the medical examination he reported his continued pain to these officers. According to plaintiff's testimony, one officer, defendant Rauser, inquired as to whether plaintiff had seen the prison physician that morning and as to what the physician had concluded. Plaintiff stated that he told Rauser that the doctor had diagnosed the injury as only a bruise. Plaintiff testified that the other officer did not respond at all to his request for medical attention. During his testimony, however, plaintiff never identified this second officer by name or point him out in the courtroom. Yet, this second officer was apparently a defendant who testified that plaintiff made no request for medical treatment. Reviewing plaintiff's assertions in light of the entire record, we cannot say that the district court abused its discretion in finding plaintiff's claims against the corrections officers frivolous.
 
 
 23
 Plaintiff also argues that the district court erred as a matter of law in finding his claims frivolous after it denied defendants' motions for directed verdicts. A motion for a directed verdict should be granted if there is only one reasonable conclusion as to the verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The inquiry has been characterized as identical to that applied to a summary judgment motion. Anderson, 477 U.S. at 251, 106 S.Ct. at 2511; see United States v. One 107.9 Acre Parcel of Land, 898 F.2d 396 (3d Cir.1990). Thus, a directed verdict should be granted if there are no genuine issues of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); One 107.9 Acre Parcel of Land, 898 F.2d 396.
 
 
 24
 Do the rules governing the determination of a motion for a directed verdict require us to conclude that the denial of such a motion will, in all circumstances, foreclose a later consideration of the frivolousness of the claim for attorneys' fee purposes? We think not. We say this particularly because there may be several reasons why a district court would deny such a motion without addressing the sufficiency of plaintiff's showing. Indeed, in many circuits the district courts have been instructed to deny such motions generally and reserve until after the jury verdict a decision on the sufficiency of plaintiff's case. There are also situations where the district court might have to wait for the evidence to be transcribed in order to make its ruling and might not wish to delay unduly jury consideration. Given these and other considerations, we conclude that the denial of a motion for a directed verdict does not, as a matter of law, foreclose consideration of a defendant's later request for fees based on the frivolousness of the claim.
 
 
 25
 We turn next to the district court's reasons for denying the motions for directed verdicts. We must decide whether they are consistent with the sound exercise of its discretion in granting defendants' fee applications. We note that the court's reasons for denying the motions of the prison physician and officer Rauser differ from the reasons relied on for denying every other directed verdict motion. We will, therefore, address these two motions separately. As to the claim against the prison physician, the court stated: "[I]t seems to me that [the doctor] acted entirely reasonably, but I'm going to let [the claim] first go to the jury and I can correct any error [subsequently]." In response to defendant Rauser's motion, the court stated: "This motion will probably required [sic] me to review the record if it's necessary. At this point at least I don't have a sufficient recollection on which to grant it.... [A]t this time I deny that motion." We read this language of the district court as deferring until after the jury's verdict a determination as to the legal sufficiency of plaintiff's claims against the doctor and Rauser. It assuredly cannot be said to constitute an evaluation of the evidence. In consequence, it did not foreclose later consideration of the issue of frivolousness.
 
 
 26
 As to every other directed verdict motion, the court's explanation is found in its memorandum opinion finding plaintiff's claims frivolous. It stated that it denied the motions because of "the direct conflict in the oral testimony at trial." We cannot say that this conclusion represented a judgment that there was a genuine issue as to the relative credibility of the testimony or that there was sufficient evidence to support plaintiff's version of events. Thus, it did not constitute an evaluation of the evidence that is inconsistent with its use in determining the fee requests.
 
 
 27
 We are not, of course, called upon here to decide the appropriateness of the district court's denial of defendants' directed verdict motions. We do conclude, however, that the court's denial of the motions was not conclusive on the issue of frivolousness. We say this because, in denying the motions, the court did not conduct an analysis of the legal or evidentiary sufficiency of plaintiff's claims. The district court therefore did not abuse its discretion in finding plaintiff's claims frivolous despite a denial of defendants' motions for directed verdicts.
 
 
 28
 We emphasize that we are not confronted with a case where the district court refused even to consider its decision on a directed verdict motion as any evidence of the non-frivolousness of a claim. Here, the district court acknowledged that plaintiff's claims withstood motions for directed verdict, but concluded that its ruling did not, in the circumstances, preclude a later finding of frivolousness. Its approach did not constitute an abuse of discretion.
 
 
 29
 Therefore, we will affirm the order of the district court to the extent that it assessed a portion of defendants' attorneys' fees against plaintiff. We will reverse and vacate that portion of the award of fees assessed against plaintiff's counsel.
 
 
 30
 Costs will be assessed in favor of the prevailing parties.
 
 
 
 [1]
 The standards for assessing attorneys' fees under Sec. 1988 and 42 U.S.C. Sec. 2000e-5(k) of Title VII of the Civil Rights Act of 1964 are identical. Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980); Roadway, 447 U.S. at 758 n. 5, 100 S.Ct. at 2460 n. 5; S.Rep. No. 94-1011, 94th Cong., 2d Sess. 2-6, reprinted in 1976 U.S.Code Cong. & Admin.News 5908, 5909-13. Cases interpreting one statute may be used to interpret the other. Sullivan v. Commonwealth of Pa. Dept. of Labor & Indus., Bureau of Vocational Rehabilitation, 663 F.2d 443, 447 n. 5 (3d Cir.1981), cert. denied, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982)
 
 
 [2]
 Other claims in plaintiff's first amended complaint were apparently not submitted to the jury and the district court did not consider whether they were frivolous in the memorandum opinion attached to its order awarding defendants their attorneys' fees. Plaintiff does not assert any error in this regard and, consequently, we will not consider the matter further