Jessica HANKEY, Individually, and as
Administratrix of the Estate of
Ryan Rohrbaugh, Appellant

v.

WEXFORD HEALTH SOURCES, INC.;
Prison Health Services, Inc.; D.O.
Mark Baker; D.O. Alan Esper; Deborah O'Leary, PA–C.

No. 09–3675.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) April 16, 2010.

Filed: June 4, 2010.

Charles W. Marsar, Jr., Esq., Harrisburg, PA, for Appellant.

Patricia L. Dodge, Esq., Joshua R. Lorenz, Esq., Meyer, Unkovic & Scott, Pittsburgh, PA, William D. Kennedy, Esq., Rosemary R. Schnall, Esq., White & Williams, Berwyn, PA, Gary D. Bax, Esq., Murphy Taylor, Erie, PA, for Wexford Health Sources, Inc.; Prison Health Services, Inc.; D.O. Mark Baker; D.O. Alan Esper; Deborah O'Leary, PA–C.

Before: FISHER and COWEN, Circuit Judges, and PRATTER,* District Judge.

OPINION OF THE COURT

PRATTER, District Judge.

Ryan Rohrbaugh was diagnosed with malignant melanoma while incarcerated at

---

* Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

State Correctional Institution—Albion ("Albion"). He received a significant amount of medical treatment at Albion, but did not consult with an oncologist prior to his release from prison. After his release, Mr. Rohrbaugh filed a lawsuit in the Middle District of Pennsylvania, raising a multitude of federal and state claims against various defendants. Mr. Rohrbaugh's claims included, *inter alia*, a claim against Dr. Mark Baker, a family practitioner and the medical director of Albion, for deliberate indifference to medical needs under 42 U.S.C. § 1983 and the Eighth Amendment, as well as a claim against Dr. Baker for medical malpractice under Pennsylvania state law.

Mr. Rohrbaugh subsequently passed away, and Ms. Jessica Hankey was substituted as a party. Ms. Hankey, individually and as the Administratrix of Mr. Rohrbaugh's estate, now appeals from an Order and Judgment entered by the District Court granting summary judgment to Dr. Baker on the § 1983 claim and declining to exercise supplemental jurisdiction over the state medical malpractice claim. We will affirm the District Court's judgment.[1]

## I. Factual and Procedural Background

This case initially involved several additional parties and claims, but the issues on appeal are limited to the treatment that Mr. Rohrbaugh received at Albion by Dr. Baker.[2] We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we set forth only those facts necessary to our analysis.

While incarcerated at Albion, Mr. Rohrbaugh underwent a shave biopsy of a lesion, or mole, on his back. This biopsy was performed on September 27, 2003, and a pathology report was generated on October 3, 2003. The report contained the following diagnosis: "Malignant Melanoma, with invasion of at least the reticular dermis (Clark's level of at least IV), to a maximum Breslow thickness of at least 5mm, with extension to the base (deep margin) of the biopsy." (App. at 51.) On October 7, 2003, this pathology report was given to Dr. Baker, who reviewed it. Dr. Baker then referred Mr. Rohrbaugh to a general surgeon, Dr. Alan Esper.

Dr. Esper saw Mr. Rohrbaugh at the prison's general surgery clinic on October 15, 2003. At that time, Mr. Rohrbaugh told Dr. Esper that he had had the mole for two years and that it had gotten progressively larger. Later that same day, Dr. Esper wrote a letter to Dr. Baker, recommending that Mr. Rohrbaugh receive a wide excision of the lesion. Dr. Baker wrote an order for a wide excision,[3] which Dr. Esper performed on November 4, 2003. A pathology report was generated two days later, which reflected that there was:

1. The District Court had jurisdiction pursuant to 42 U.S.C. § 1983, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

2. Mr. Rohrbaugh was initially incarcerated at York County Prison, and after several months he was transferred to State Correctional Institution—Camp Hill. He was later transferred to Albion, where he remained until his release. Although Mr. Rohrbaugh alleged that he requested treatment for a lesion on his back at all three places of incarceration, the facts relevant to this appeal are limited to those that arose at Albion.

3. At his deposition, Dr. Baker was questioned as to why he wrote the order for the wide excision, as opposed to Dr. Esper writing the order. Dr. Baker testified that the normal procedure was for Dr. Esper to make treatment recommendations and for Dr. Baker to review them. If Dr. Baker agreed with the recommendations, he would take the steps necessary to implement them.

1) Superficial spreading [of] malignant melanoma, Clark's level V, 6 mm thick with mild lymphohistocytic inflammatory infiltrate . . .

2) All surgical margins of excision negative for malignant neoplasm;

3) Cicatrix.

(Supp.App. at 20.) The pathology report was received by Dr. Baker on the following day, November 7, 2003, and Dr. Baker made a notation on the report that the findings were abnormal.

Dr. Esper followed up with Mr. Rohrbaugh on November 19, 2003, and recommended that he see an oncologist. Later that same day, Dr. Baker spoke to both Dr. Esper and Mr. Rohrbaugh about Dr. Esper's recommendation that Mr. Rohrbaugh see an oncologist. However, Mr. Rohrbaugh told Dr. Baker that he was scheduled to be released from prison soon, and strongly preferred to delay further treatment until after his release. Dr. Baker confirmed that Mr. Rohrbaugh was scheduled to be released from prison in two to eight weeks, and likely with an actual release in less than four weeks. Under these circumstances, Dr. Baker decided to defer to Mr. Rohrbaugh's expressed wishes, and he did not order an oncology consult for Mr. Rohrbaugh prior to release from prison. At this point in time, Dr. Baker did not know whether Mr. Rohrbaugh's cancer had metasticized, and he knew that an oncology consultation was necessary to determine Mr. Rohrbaugh's prognosis.

Dr. Baker again met with Mr. Rohrbaugh on December 5, 2003, and advised him to seek further medical treatment after his release, including an oncology consult. At that time, Dr. Baker gave Mr. Rohrbaugh a copy of his November 6 pathology report, a letter from Dr. Esper regarding the surgery, and a prescription for a possible follow-up metastatic work-up.

Mr. Rohrbaugh was released from prison on December 22, 2003. He sought care for his melanoma approximately seven weeks after his release. Unfortunately, his cancer recurred and he was diagnosed with metastatic disease, from which he passed away on June 7, 2006.

In support of her Eighth Amendment arguments, Ms. Hankey presents the report of a family medicine expert, Dr. Casey Cochran, who opined that once Dr. Baker knew that Mr. Rohrbaugh's melanoma was at least 5mm thick, Dr. Baker should have required a referral to a medical oncologist or a melanoma specialist "soon after the melanoma diagnosis in order to optimize the chances for appropriate therapy." (App. at 58–59.) In addition, Ms. Hankey presents the report and testimony of a surgical oncology expert, Dr. Douglas Fraker, who opined that given the information available to Dr. Baker as of his November 19, 2003 evaluation of Mr. Rohrbaugh, the appropriate standard of care required an urgent re-excision with sentinel node biopsy and lymph node mapping. (App. at 60–61.) Ms. Hankey also emphasizes that Dr. Baker never asked Mr. Rohrbaugh to sign a DC–462 form, which is a form that the Pennsylvania Department of Corrections maintains so that medical providers can document occasions when inmates refuse medical treatment.

On July 8, 2009, the District Court granted that part of Dr. Baker's motion for summary judgment regarding the federal civil rights claims, and denied that part of Dr. Baker's motion regarding state and common law medical malpractice claims. On August 13, 2009, pursuant to an agreement of the parties, the Court issued an order declining to exercise supplemental jurisdiction, dismissed the remaining state and common law medical

malpractice claims, and entered a final judgment.[4] Ms. Hankey then filed this appeal regarding the entry of judgment in favor of Dr. Baker on the federal claims.

## II. Standard of Review

Our standard of review over the District Court's grant of summary judgment is plenary. *See McGreevy v. Stroup,* 413 F.3d 359, 363 (3d Cir.2005). Summary judgment is proper "if there is no genuine issue as to any material fact and [the] movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the Appellant failed to "make a showing sufficient to establish the existence of an element essential" to her case, and for which she bears the burden of proof at trial, we must affirm the entry of summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We view the record in the light most favorable to the Appellant and draw all reasonable inferences in Appellant's favor. *See Nicini v. Morra,* 212 F.3d 798, 806 (3d Cir. 2000). We may affirm the District Court on any basis that finds support in the record. *Tourscher v. McCullough,* 184 F.3d 236, 240 (3d Cir.1999).

## III. Discussion

The Eighth Amendment, through its prohibition of cruel and unusual punishment, imposes a duty on prison officials to provide humane conditions of confinement, including adequate medical treatment.

*Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A violation of the Amendment occurs when (1) a medical need is serious and (2) the acts or omissions by prison officials demonstrate "deliberate indifference" to the inmate's health or safety. *See id.* at 104–06, 97 S.Ct. 285; *Monmouth County Corr. Institutional Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987). Thus, there are both objective and subjective components to a deliberate indifference claim. *Montgomery v. Pinchak,* 294 F.3d 492, 499 (3d Cir.2002).

Deliberate indifference may be manifested by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05, 97 S.Ct. 285; *see also Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999) (reiterating that deliberate indifference may be demonstrated by intentionally denying, delaying or preventing a prisoner from receiving needed or recommended medical treatment). *Estelle* instructs, however, that medical judgments by doctors or prison officials that later prove inappropriate or negligent are not alone sufficient to give rise to an Eighth Amendment claim. *See Estelle,* 429 U.S. at 104–07, 97 S.Ct. 285; *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (reiterating *Estelle*'s distinction between deliberate indifference to serious medical needs and "mere negligence"); *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993) (acknowledging that a deliberate indifference claim requires that a prisoner demonstrate "more than negligence"). Instead, the deliberate indifference standard requires "obduracy and wantonness," *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89

---

4. Ms. Hankey subsequently transferred the lawsuit, together with the record, to state court pursuant to 42 Pa.C.S.A § 5103(b).

L.Ed.2d 251 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a substantial risk of serious harm. *See Rouse*, 182 F.3d at 197. Accordingly, when some medical care is administered by officials that arguably falls below the generally accepted standard of care, that medical care is often sufficient to rebut accusations of deliberate indifference and preclude a finding of an Eighth Amendment violation. *See, e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir.1990) (stating that prison officials and doctors will be given wide latitude to address the medical needs of inmates and that "it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights").

In *Farmer v. Brennan*, the Supreme Court explained that the term "deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." 511 U.S. at 836, 114 S.Ct. 1970. The Court instructed that:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837, 114 S.Ct. 1970.

Here, we are concerned with whether Dr. Baker acted with deliberate indifference to Mr. Rohrbaugh's health. The evidence reflects that Dr. Baker knew that Mr. Rohrbaugh needed to consult with an oncologist regarding the lesion on his back, and that the consultation should be done sooner rather than later. However, there is nothing to suggest that Dr. Baker thought that an oncology consultation was necessary prior to Mr. Rohrbaugh's release from prison, especially in the face of Mr. Rohrbaugh's expressed wish to wait until after he was released to receive follow-up care. As Dr. Baker testified at his deposition:

> Q: Okay. Did you feel an oncology consult was necessary?
>
> A: I felt an oncology consult was necessary at some point. But the key is the patient was adamant about getting out and wanting to follow up with his own doctors. And that's his own choice.

(App. at 39.) [5]

Of course, Mr. Rohrbaugh's expressed wish to delay further care cannot be divorced from Dr. Baker's duty to evaluate Mr. Rohrbaugh's condition and educate Mr. Rohrbaugh so that he can make informed decisions about his health. Although *Estelle* "affords considerable lati-

---

5. Later in the deposition, Dr. Baker clarified his use of the phrase "at some point"; however, the relevant deposition page was not included in the appendices on appeal. Dr. Baker's clarification, as reprinted in the District Court's opinion, is as follows:

Q: What do you mean when you use the phrase "at some point"?

A: Well, again, with the—with his diagnosis, I would think that sooner than later would be better, obviously. But since he was—the dates were coming up, he was insistent upon him leaving within four to six weeks, eight, that it should be done soon.

Q: Did you believe that the oncology conduct should be done sooner than four to six weeks?

A: No, that—that would be a reasonable amount of time to get someone in to an oncologist ... I would recommend within the 60–day time frame, yes.

*Hankey v. York County Prison*, No. 3:05–CV–0136, at 20–21 n. 8, 2009 WL 2043392 (M.D.Pa. Jul. 8, 2009).

tude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," such diagnosis and treatment must be sufficiently informed so as not to suggest deliberate indifference on the part of Dr. Baker. *See Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979). Here, looking at the evidence in this case as a whole, it is clear that the high bar for deliberate indifference has not been reached.

The evidence reflects that in a period of less than four months, Dr. Baker reviewed an initial pathology report of Mr. Rohrbaugh's lesion; referred Mr. Rohrbaugh to a surgeon for further examination and treatment; ordered an excisional biopsy of Mr. Rohrbaugh's mole; reviewed another pathology report of Mr. Rohrbaugh's lesion; and followed-up with Mr. Rohrbaugh and the surgeon regarding Mr. Rohrbaugh's future treatment, including the recommended oncology consult. When Mr. Rohrbaugh expressed his wish to delay further treatment until after his upcoming release from prison, Dr. Baker followed up with prison guards to confirm when Mr. Rohrbaugh was scheduled to be released, so that Mr. Rohrbaugh could seek an oncology consult in a timely manner after his release. Dr. Baker met with Mr. Rohrbaugh yet again, to discuss the follow-up care that Mr. Rohrbaugh should seek upon his release, including the oncology consult, and to give Mr. Rohrbaugh copies of documents that might be helpful for his follow-up care.[6] Under these circumstances, the subjective component of the deliberate indifference test has not been met. There is nothing to suggest that Dr. Baker was reckless in his decision to allow Mr. Rohrbaugh to wait until his release before consulting with an oncologist, or that Dr. Baker consciously disregarded a substantial risk of serious harm to Mr. Rohrbaugh's health. *See Rouse,* 182 F.3d at 197. A reasonable jury could not conclude, on the evidence presented, that Dr. Baker's state of mind rose to the level of "obduracy and wantonness" necessary for an Eighth Amendment claim. *Whitley,* 475 U.S. at 319, 106 S.Ct. 1078.

Appellant chooses a handful of cases [7] in which this Court has addressed the con-

---

**6.** Appellant makes much of the fact that Mr. Rohrbaugh never signed a DC–462 form, and argues that because Dr. Baker never ordered an oncology consult, Mr. Rohrbaugh was never actually in a position to formally refuse the consult. This argument does not assist Appellant in making out a deliberate indifference claim. The evidence reflects that Mr. Rohrbaugh clearly expressed his wish to delay meeting with an oncologist until after his release from prison, and Dr. Baker honored that wish after confirming that Mr. Rohrbaugh would be free to consult an oncologist in just a few weeks. Whether Mr. Rohrbaugh's wish should have been formalized in a DC–462 form—or whether Dr. Baker should have scheduled an oncology consult prior to Mr. Rohrbaugh's release, despite Mr. Rohrbaugh's express wishes to the contrary—may reflect on the quality of Dr. Baker's exercise of professional judgment and thus be relevant to a medical malpractice claim. However, these inquiries do not alter our resolution of the issues presented on appeal.

**7.** Appellant relies most heavily on *West v. Keve,* 571 F.2d 158 (3d Cir.1978) and *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754 (3d Cir.1979), which make clear that inadequate medical care, uninformed medical decisions, and failures to arrange consultations with a specialist may, in some circumstances, suggest deliberate indifference. *See West,* 571 F.2d at 162. However, the medical treatments provided to the patients in *West* and *Pierce* were markedly less adequate to address the medical conditions at issue in those cases, such that the evidence could support a finding of deliberate indifference on the part of the treating professionals. By contrast, here the evidence regarding the medical care given to Mr. Rohrbaugh, and the evidence regarding the state of mind of Dr. Baker, cannot support a deliberate indifference claim. The evidence here reflects that Dr.

tours of deliberate indifference claims and has held that under some circumstances, delaying treatment for non-medical reasons can form the basis for an Eighth Amendment claim, and a physician's state of mind can be inferred by the actions of that physician. However, neither the fact patterns nor the discussion of the law in any of those cases suggests that the subjective standard for deliberate indifference is met in this case. Mr. Rohrbaugh's claim amounts to a disagreement over whether he received the best, or the quickest, or the most appropriate care for his condition, and such a disagreement over medical treatment does not rise to the level of deliberate disagreement. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir.2004). It may be that Appellant will pursue the state law cause of action against Dr. Baker, but such a claim sounds in medical malpractice and not in the Eighth Amendment.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's Order.

Baker did in fact exercise his professional medical judgment throughout Mr. Rohrbaugh's treatment, such that Mr. Rohrbaugh's Eighth Amendment claim cannot stand. Whether Dr. Baker's exercise of medical judgment met the requisite standard of care is, of course, a different question, and one integral to Mr. Rohrbaugh's state law medical malpractice claim.

Appellant also cites *Durmer v. O'Carroll*, in which this Court concluded that an inmate had a viable deliberate indifference claim against the prison physician where the inmate, who had suffered a stroke, had been denied physical therapy for 18 months while he was referred from one consultant to anoth-

er. *See* 991 F.2d at 67–68. This case is distinguishable from *Durmer*, however, in that Dr. Baker knew that Mr. Rohrbaugh was scheduled to be released within just a few weeks—a period that Dr. Baker thought, in his professional judgment, was reasonable to delay in seeing an oncologist. The delay here was significantly shorter than the one in *Durmer*, and does not suggest a subjective "deliberate indifference" state of mind on the part of Dr. Baker. Moreover, here the delay was not actually occasioned by Dr. Baker, inasmuch as Dr. Baker was ready to arrange a consult with an oncologist at the time that Dr. Esper recommended it, and Mr. Rohrbaugh himself chose to defer the consultation.