**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———————

No. 17-3369
———————

VERNON EARL MCGINNIS, JR.,
Appellant

v.

MARK HAMMER, Physician's Assistant;
STEPHANIE WOOD, C.H C.A./R.N.;
SUPERINTENDENT MARK CAPPOZA;
CORRECT CARE SERVICE LLC, CCS;
CARROL SCIRE, Superintendent's Assistant/Grievance Coordinator
———————————————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-15-cv-00398)
District Judge:  Honorable Joy Flowers Conti
———————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 7, 2018

Before: VANASKIE, COWEN and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 11, 2018)
———————

OPINION[*]
———————

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Vernon Earl McGinnis, Jr., a Pennsylvania state prisoner proceeding in forma pauperis, appeals from the District Court's order granting the defendants' motions to dismiss. For the reasons discussed below, we will affirm.

I.

Because we write primarily for the parties, who are already familiar with this case, we include only those facts necessary to reach our conclusion.

McGinnis alleges that in late 2014, while incarcerated at SCI Pittsburgh, he experienced severe pain in his left knee after jogging. On December 29, 2014, McGinnis was seen by Mark Hammer, a Physician's Assistant employed by Correct Care Service LLC. McGinnis alleges that Hammer did not touch or examine him, but that Hammer did diagnose a knee sprain, prescribe ibuprofen, and advise McGinnis to "use common sense." Hammer did not order x-rays or an MRI, or prescribe crutches, a knee brace, or an ace wrap.

For the following two weeks, McGinnis walked with a painful limp. The limp caused him to fall once on the F Block steps on January 13, 2015. McGinnis was put in a wheelchair and examined by medical personnel, but has not alleged that he suffered any injuries from the fall. He was given crutches and a follow up appointment was scheduled.

Because he was unsatisfied with his initial treatment from Hammer, McGinnis submitted a request slip to Stephanie Wood, a Corrections Health Care Administrator, advising of his ongoing knee pain and requesting an MRI. McGinnis subsequently informed Carol Scire, the Grievance Coordinator, and Mark Capozza, the Superintendent,

2

of his need for additional medical treatment. On January 13, 2015, McGinnis filed a grievance against Hammer, Wood, and Capozza, on the grounds that he was being denied necessary medical treatment. McGinnis alleges that these defendants conspired together to turn a "blind eye" to his knee problem, and that Wood was improperly assigned to review the grievance. Wood denied the grievance and found that McGinnis was "receiving the community standards of medical care."

On January 16, 2015, McGinnis was examined by Physician's Assistant Meredith George. George examined McGinnis' leg and concluded that he had ligament damage. McGinnis requested an MRI, but was allegedly told by George "[I]t does not work like that, if the medical [department] fixed everyone in prison, the state would be bankrupt." George provided better crutches, ordered x-rays, and prescribed physical therapy.

McGinnis was seen by Hammer again on February 16, 2015. McGinnis told Hammer that he could not walk and that his left knee was getting worse. After examining McGinnis, Hammer determined that his ligaments were "laxed," ordered a hinged knee brace, and prescribed leg-strengthening exercises. When McGinnis asked how Hammer could make a diagnosis and prescribe treatment without an MRI, Hammer allegedly accused McGinnis of "faking" and said that "[y]ou will not get an M.R.I., and fixing your knee is an elective procedure…they do not have to make you a world class athlete." McGinnis then informed Hammer that the ibuprofen was not alleviating his pain. Hammer responded by canceling the prescription, without prescribing any other pain medication. McGinnis alleged that "this is in retaliation, he is aware of the prison grievance I filed on him." McGinnis has not alleged that he requested any other pain

3

medication at that time. On March 5, 2015, McGinnis was seen again by Meredith George, who prescribed naproxen. McGinnis alleged that the naproxen "is less than what I was getting with the [ibuprofen] and I was still in constant and severe pain."

McGinnis then filed his complaint in the District Court, alleging violations of his Eighth Amendment rights. Following a hearing on June 9, 2015, the District Court ordered the defendants to schedule an MRI of McGinnis' knee and to have the knee evaluated by an orthopedic surgeon. The MRI was completed and a board-certified orthopedic surgeon diagnosed tendonitis of the abductor muscle, which did not require surgery. McGinnis does not allege that the diagnosis required any alternative course of treatment, and states that by November 2015, his knee had healed to the point where he could walk normally and resume weightlifting.

In late November 2015, McGinnis experienced pain and swelling in his lower abdomen. He did not seek treatment for this issue until April 2016. In the following months, McGinnis was seen by several physicians and eventually had surgery to repair a hernia.

The District Court granted McGinnis leave to file an amended complaint, which he filed on November 16, 2015. The defendants then filed a motion to dismiss. After responding, McGinnis sought and was granted leave to file his Second Amended Complaint. The defendants again filed a motion to dismiss, and on December 19, 2016, the Magistrate Judge recommended dismissing the complaint. McGinnis filed objections to the Magistrate's report and, without seeking leave, filed the Third Amended Complaint, which the District Court permitted to stand. The defendants then filed

motions to dismiss the Third Amended Complaint for failure to state a claim. The Magistrate Judge again recommended granting the defendants' motions and dismissing the Third Amended Complaint with prejudice. The District Court adopted the Magistrate Judge's report and entered a judgment in favor of the defendants. This appeal ensued.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We review de novo the District Court's decision to grant a motion to dismiss. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). Dismissal is appropriate if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). We first "outline the elements a plaintiff must plead to state a claim for relief," then "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth," and assuming the veracity of the well-pled factual allegations that remain, "'determine whether they plausibly give rise to an entitlement to relief.'" Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

## III.

In order to state a claim under 42 U.S.C. § 1983 that prison officials have violated his Eighth Amendment rights, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)); see also Estelle v. Gamble, 429 U.S. 97 (1976).

5

With respect to the second prong, "this Court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003). Here, McGinnis has sufficiently alleged that he had serious medical needs requiring treatment for his knee and hernia.

With respect to the first prong, we have recognized that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'" Pearson, 850 F.3d at 535 (quoting United States ex. rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

To state a claim for inadequate medical treatment, the plaintiff must allege that the treatment violated professional standards of care, in addition to alleging that the defendant acted "with the requisite state of mind [deliberate indifference] when providing that inadequate care." Pearson, 850 F.3d at 535. "[M]ere disagreement as to the proper medical treatment" is insufficient to state an adequacy of care claim, Monmouth Cty. Corr. Inst. v. Lanzaro, 834 F.2d 326, 346 (3d. Cir. 1987), and we "presume that the treatment of a prisoner is proper absent [an allegation] that it violates professional standards of care." Pearson, 850 F.3d at 535 (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")).

In contrast, to state claim based on the delay or denial of medical treatment, "since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim," and the plaintiff need only

6

allege that the defendant delayed or denied treatment with deliberate indifference. Pearson, 80 F.3d at 537. This Court has "found deliberate indifference in a variety of contexts including where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs." Pearson, 850 F.3d at 538 (citing Lanzaro, 834 F.2d at 347); see also Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (Eighth Amendment violated where denial of care "exposes the inmate to undue suffering or the threat of tangible residual injury").

Here, McGinnis argues that he has stated a claim based on the delay or denial of medical treatment by Defendant Hammer on two occasions: December 29, 2014, and February 16, 2015. With respect to Hammer's examination of McGinnis on December 29, 2014, McGinnis has failed to state a delay or denial claim, because the complaint makes clear that Hammer diagnosed a knee sprain and prescribed ibuprofen on that date. Cf. Pearson, 850 F.3d at 538 (no denial of care claim where defendant diagnosed and treated prisoner, even if inadequately—in which case proper claim would be for inadequate care); see also Parkell v. Danberg, 833 F.3d 313, 338 (3d Cir. 2016) (mere "brusqueness" insufficient to suggest that delay of treatment was deliberate and for non-medical reasons, where defendant "did not ignore" plaintiff's medical needs).

Neither has McGinnis stated a claim for delay or denial of medical treatment on February 16, 2015, when Hammer canceled McGinnis' prescription for ibuprofen,

allegedly in retaliation for the prison grievance that McGinnis had filed against Hammer. McGinnis' allegation is not plausible because—in the same paragraph of the complaint where McGinnis makes his sole allegation of retaliation—he also alleges that Hammer examined his knee, prescribed a hinged knee brace, and canceled the ibuprofen prescription only after McGinnis told Hammer that the ibuprofen had been ineffective. McGinnis has not alleged that he requested alternative pain medication or otherwise made any plausible allegation that Hammer had retaliatory motives.[1] McGinnis' conclusory allegation that Hammer denied the ibuprofen in retaliation for the grievance, rather than for the reasons apparent on the face of the complaint, fails to state a plausible claim to relief. See Twombly, 550 U.S. at 570 (2007).[2]

---

[1] The same is true with respect to Physician's Assistant George's alleged comment that "if the medical [department] fixed everyone in prison, the state would be bankrupt." McGinnis has alleged that this indicates that the MRI was denied based on cost. But in the same paragraph where McGinnis makes this allegation, he also alleges that George treated McGinnis, provided better crutches, and ordered x-rays and physical therapy. Moreover—despite this Court's having ordered the parties to brief the significance of the MRI that McGinnis eventually received—McGinnis has failed to argue that any alternative treatment was necessary based on the MRI. McGinnis has thus failed to plausibly allege that his MRI was denied for non-medical reasons or that he experienced "undue suffering or the threat of tangible residual injury" based on the delayed MRI. Spruill, 372 F.3d at 235.

[2] For similar reasons, to the extent that the District Court should have construed McGinnis' allegation as raising a retaliation claim under the First Amendment, McGinnis has failed to state such a claim. McGinnis must allege that the conduct provoking the alleged retaliation was constitutionally protected, that he suffered some "adverse action" at the hands of the prison officials "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights," and that the constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in original) (internal quotation marks omitted). McGinnis' conclusory allegation that his grievance was a substantial motivating factor in Hammer's decision to deny ibuprofen fails to "reflect 'more than a sheer possibility that a defendant has acted unlawfully.'" Oliver v. Roquet, 858 F.3d 180, 192 (3d Cir. 2017) (quoting

8

Because McGinnis has failed to state a claim for delay or denial of medical care, we next address whether he has stated an adequacy of care claim. We agree with the District Court's determination that he has not. McGinnis' adequacy of care claims fail because we "presume that the treatment of a prisoner is proper absent [an allegation] that it violates professional standards of care." Pearson, 850 F.3d at 535 (citing Brown, 903 F.2d at 278 ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")). McGinnis has failed to allege how his treatment fell below any professional standard of care.[3] To the extent McGinnis alleges that he should have received x-rays or an MRI sooner, he eventually received both tests, and has not alleged that those tests indicated that any additional or alternative treatment was required. In fact, McGinnis alleges that by November 2015, he had recovered to the point where he could walk normally and lift weights.[4]

Iqbal, 556 U.S. at 678). Moreover, we note that we ordered the parties to brief whether McGinnis has stated a First Amendment retaliation claim. McGinnis failed to make any argument in support of this claim against Hammer, and to the extent he raises other First Amendment claims against other defendants, the claims are meritless.

[3] Moreover, even if Hammer's treatment could be considered negligent, McGinnis' claim would still fail because he did not sufficiently allege deliberate indifference. See Rouse, 182 F.3d at 197 ("Neither negligence nor medical malpractice is sufficient to state a claim for deliberate indifference"). McGinnis failed to allege that Hammer was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and that Hammer "'also draw the inference.'" Pearson, 850 F.3d at 538 (quoting Farmer v. Brennan, 511 U.S. 825, 835–37 (1994)).

[4] Similarly, McGinnis failed to allege how the treatment of his hernia fell below any professional standard of care. McGinnis' filings indicate that he has received extensive treatment for his hernia, including surgery. Furthermore, McGinnis has not named as a defendant any individual involved in the treatment of his hernia. To the extent McGinnis claims that the treatment of his knee injury caused him to suffer a hernia, that claim lacks

9

We also agree with the District Court's determination that McGinnis failed to state an Eighth Amendment claim against the remaining defendants. Defendants Wood, Cappoza and Scire are not physicians. A non-medical prison official is not charged with deliberate indifference for withholding adequate medical care from a prisoner being treated by medical personnel absent "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Spruill, 372 F.3d at 236. Defendant Correct Care Service LLC, as a corporation providing health services to inmates, may be liable if its custom or policy causes a constitutional violation. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). Here, as discussed above, McGinnis has failed to allege a constitutional violation, let alone one that the non-medical officials had a reason to be aware of, or that Correct Care Service caused as a result of its custom or policy.[5]

Finally, we agree with the District Court that granting leave to further amend would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The District Court allowed McGinnis to amend his complaint three times

---

facial plausibility—McGinnis alleged that his knee had recovered and he had resumed lifting weights before he suffered the hernia. See Twombly, 550 U.S. at 570.

[5] We agree with the District Court that, to the extent McGinnis alleged a conspiracy among these defendants, his conclusory allegations fail to state a claim. See Twombly, 550 U.S. at 570; see generally 42 U.S.C. §§ 1985(3), 1986. Similarly, McGinnis' allegations regarding the processing of his medical grievances fail to state a plausible claim under 42 U.S.C. § 1983 that any constitutional right was violated.

over the past two years. Permitting further amendment would be inequitable to the defendants, and McGinnis has not shown that further amendment would be fruitful.[6]

Accordingly, we will affirm the judgment of the District Court. Appellant's motion for entry of default is denied.

---

[6] We note that McGinnis submitted two declarations in opposition to the motions to dismiss. To the extent those declarations raise new claims which are unrelated to—and occurred subsequent to—the allegations in the Third Amended Complaint, we agree with the District Court's determination that McGinnis should pursue these claims through separate litigation and after proper administrative exhaustion.