**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2326
_____

HERMAN GAINES,
                              Appellant

v.

BRAD BUSNARDO; MARY ELLEN GREEN; JOHN DOE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-13-cv-06566)
District Judge: Honorable Jerome B. Simandle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 25, 2018

Before: VANASKIE, COWEN and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 29, 2018)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se Appellant Herman Gaines appeals the District Court's order granting summary judgment to the Appellees. For the reasons detailed below, we will affirm in part, vacate in part, and remand for further proceedings.

I.

Gaines brought this action against Appellees Brad Busnardo and Mary Ellen Green about the medical care he received from them in September 2011, after he hurt his ankle. At the time, Gaines was an inmate at South Woods State Prison Facility, and both Appellees worked at the prison as nurses. After hurting his ankle playing basketball, Gaines went to the health unit and was examined by Busnardo. He told Gaines to ice his ankle, offered him Motrin (which Gaines declined to take because of religious beliefs), and gave him an ACE bandage. However, he did not offer Gaines crutches or an ankle brace, and did not put him on the list to see the doctor that week. A few days later and still experiencing pain, Gaines went back to the health unit and was treated by Green. She gave Gaines an ankle sleeve, Motrin (Gaines accepted the medication this time because the pain was "unbearable"), and put him on the doctor's list. Green also did not give or offer Gaines crutches or an ankle brace. Gaines eventually received crutches from a physical therapist after a guard noticed Gaines struggling to walk. Ultimately, a doctor at the prison determined that Gaines had ruptured his Achilles tendon.

Gaines filed a complaint in the Superior Court of New Jersey against the Appellees, alleging medical malpractice under New Jersey law and deliberate indifference to his medical needs in violation of the Eighth Amendment. In his

complaint, Gaines argued that the Appellees' failure to give him crutches caused him excruciating pain, which could have been avoided. Defendants removed the case to United States District Court for the District of New Jersey. After discovery, each side filed a motion for summary judgment. The District Court denied Gaines's motion, but granted in part and denied in part the Appellees' motion. Specifically, the District Court dismissed Gaines's medical malpractice claim under New Jersey law,[1] but determined that his Eighth Amendment claim could proceed. After a lengthy period of pretrial motions and proceedings, the Appellees filed a renewed motion for summary judgment based on our decision in Parkell v. Danberg, 833 F.3d 313 (3d Cir. 2016).[2] The District Court granted the Appellees' motion, and dismissed Gaines's remaining Eighth Amendment claim. Gaines timely appealed.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. See Gen. Ceramics Inc. v. Firemen's Fund Ins. Cos., 66 F.3d 647, 651 (3d Cir. 1995). We review de novo the

_____

[1] In his briefs, Gaines does not challenge the District Court's dismissal of the medical malpractice claim for failure to comply with New Jersey's affidavit of merit statute, so we do not consider that matter here. See United States v. Menendez, 831 F.3d 155, 175 (3d Cir. 2016).

[2] We do not read Parkell as materially changing this Court's precedent or Eighth Amendment analysis. However, we perceive no error by the District Court in allowing the renewed motion for summary judgment. See Krueger Assocs., Inc. v. Am. Dist. Tel. Co. of Pa., 247 F.3d 61, 65–66 (3d Cir. 2001) (explaining that we review whether the District Court erred by granting leave to file a renewed summary judgment motion for abuse of discretion); see also Fed. R. Civ. P. 56(b).

3

District Court's summary judgment order.  See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the summary judgment record which demonstrate the absence of a genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, the nonmoving party then must point to specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(c)(1), (e)(2); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Like the District Court, we view the facts in the light most favorable to the non-moving party and make all reasonable inferences in his favor.  See Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).

III.

The Eighth Amendment, through its prohibition of cruel and unusual punishment, forbids the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  Accordingly, in Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs.  Id. at 104-05.  To succeed on an Eighth Amendment medical care claim, "a plaintiff must make (1) a subjective showing that 'the defendants

4

were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

The parties agree that Gaines's ruptured Achilles tendon was a serious medical need. Accordingly, our inquiry focuses on whether it was error to determine that, as a matter of law, the record cannot support a finding that Busnardo or Green acted with deliberate indifference to Gaines's injury. Deliberate indifference can occur when prison officials "intentionally deny[] or delay[] access to medical care or interfer[e] with the treatment once prescribed." Id. (quoting Estelle, 429 U.S. at 104-05); see also Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (explaining that deliberate indifference requires something "more than negligence"); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights"). For the reasons that follow, we conclude that Busnardo was not entitled to summary judgment, though Green was. We turn first to Busnardo.

A.     Appellee Busnardo

Gaines's claim that Busnardo failed to provide adequate medical care presents a genuine dispute as to a material fact. Gaines argued that Busnardo's failure to give him crutches and schedule him an appointment with the doctor shows that he was deliberately indifferent to Gaines's serious medical need. In his answers to the Appellees' interrogatories and request for admissions, Gaines asserted that during his September 10,

5

2011 visit with Busnardo, he explained that he was in excruciating pain, heard a pop at the back of his ankle, could not feel his tendon, and that his ankle was swollen.[3] See Armbruster, 32 F.3d at 777; see also ECF No. 20-9 at 12. Busnardo offered an ankle sleeve, but it was too painful for Gaines to put it on at that time. Busnardo then gave Gaines an ACE bandage, offered him Motrin, and told him to put ice on his ankle (but did not provide the ice).

Accepting Gaines's story as true, which we must at this stage, and given the symptoms communicated by him at the time, Busnardo should have known that Gaines's injury was more serious than a twisted or sprained ankle (as Busnardo described the diagnosis in his medical notes). Of critical importance, of course, is Gaines's allegation that he told Busnardo that he heard a pop in the back of his ankle and could not feel the tendon. See ECF No. 20-9 at 12. That is surely enough information for Busnardo to draw an inference that Gaines was in earnest need of medical help – for example, an appointment with the doctor – and not simply an ACE bandage or a directive to ice his ankle (but failing to provide the ice). See Pearson, 850 F.3d at 540 (internal quotation marks omitted) (quoting Farmer v. Brennan, 511 U.S. 825, 843 n.8 (1994)) ("[A]n

---

[3] In its opinion granting summary judgment to the Appellees, the District Court gave a different version of the facts of this case – seemingly based on Busnardo's medical notes/records. The District Court stated that Gaines told Busnardo that he had left ankle pain when he "twisted it the wrong way." Additionally, according to the District Court, Gaines was able to perform range-of-motion activities with minor pain and Busnardo did not notice any "notable swelling." This version of the facts contradicts Gaines's assertions in his answers to the Appellees' interrogatories and request for admissions, which we must accept as true. See Armbruster, 32 F.3d at 777.

official may not escape liability by declin[ing] to confirm strong inferences of risk that he strongly suspect[s] to exist.").

We come to this conclusion not simply based on the fact that Busnardo did not provide Gaines with crutches or an ankle brace – which might well have alleviated Gaines's suffering – as that claim on its own might not be sufficient to survive summary judgment. However, Busnardo's failure to schedule Gaines for an appointment with a doctor and what Gaines describes as a dismissive attitude towards his injury and pain would have "so deviated from professional standards of care that it amounted to deliberate indifference." Pearson, 850 F.3d at 541 (internal quotation marks omitted) (quoting Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015)). This conduct is what particularly "separates this complaint from ordinary allegations of medical malpractice," which is insufficient to support a finding of a constitutional violation. Pearson, 850 F.3d at 541 (internal quotation marks omitted) (quoting White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)). Because these circumstances suggest that Busnardo may have engaged in deliberately indifferent conduct to Gaines's serious medical need, "we cannot conclude as a matter of law [his] conduct did not run afoul of the [Eighth Amendment]." Durmer, 991 F.2d at 68. Accordingly, Busnardo was not entitled to summary judgment.

## B.    Appellee Green

Finally, we conclude that summary judgment was properly granted as to Gaines's claim against Green. In his September 12, 2011 health services request form, prepared prior to seeing Green, Gaines explained that he felt a pop in his ankle while playing

7

basketball, that it was painful to walk, and could not feel his tendon. Although Green did not admit to reading the request form prior to the examination, Gaines specifically alleged that he told Green during his appointment that he "popped" his Achilles tendon and was experiencing pain.

Nevertheless, even if we assume, as we must, that Gaines's allegations are true, it is clear from the summary judgment record that Green exercised *professional* judgment in her treatment of Gaines. See Brown, 903 F.2d at 278. Given Gaines's description of his injury, the medical care Green provided to him showed that she understood that the injury was more severe than a possible twisted ankle or ankle sprain. Indeed, Green replaced Gaines's ACE bandage with an ankle sleeve, gave him Motrin, restricted his work and recreational activities, and put his name on the list for him to meet with the doctor.

While Green's actions were not altogether dissimilar to those of Busnardo, it is key that she put Gaines on the list to see the doctor that week – which indicates that she, unlike Busnardo, necessarily viewed Gaines's injury as a serious medical need. Gaines did not point to any evidence suggesting that Green's treatment decision regarding the symptoms of which she had awareness was "a substantial departure from accepted professional judgment, practice, or standards" such that a reasonable jury could conclude that she "actually did not base [her] decision on such judgment." Youngberg v. Romeo, 457 U.S. 307, 323 (1982). Perhaps crutches or an ankle brace of some type would have better alleviated Gaines's pain. But that is not the relevant question under the Eighth

8

Amendment. The actions taken by Green undisputedly indicate that she employed professional judgment, see Brown, 903 F.2d at 278, and did not act with the "obduracy and wantonness" necessary to sustain an Eighth Amendment violation, see Whitley v. Albers, 475 U.S. 312, 319 (1986). Thus, Green was entitled to summary judgment.

Accordingly, for the reasons given, we will affirm the judgment of the District Court as to Green, vacate the judgment as to Busnardo, and remand for further proceedings consistent with this opinion.[4]

---

[4] We further deny Appellees' request for leave to file a supplemental brief. See Fed. R. App. P. 28(c). Consequently, we take no action on Gaines's reply to the supplemental brief.