NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2324
_____

BRIAN BROWN,
Appellant

v.

BROOKE CIVIELLO, PSYCHOLOGIST; JOYCE KNOWLES, PSYCH DOCTOR; and
DR. BLOOM, PSYCH DOCTOR

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No. 3:22-cv-00105)
Magistrate Judge:  Honorable Patricia L. Dodge
_____

Argued December 10, 2025
_____

Before: KRAUSE, PHIPPS, and CHUNG, *Circuit Judges*

(Filed: February 25, 2026)

Matthew A. Feldman          [ARGUED]
Pennsylvania Institutional Law Project
718 Arch Street, Suite 304S
Philadelphia, PA 19106

Alexandra Morgan-Kurtz
Pennsylvania Institutional Law Project
247 Fort Pitt Boulevard
4th Floor, Pittsburgh, PA 15222

        Counsel for Appellant

Hannah Kogan        [ARGUED]
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103

      Counsel for Appellee Brooke Civiello


Cassidy L. Neal       [ARGUED]
Baum O'Connor Cullen Chmiel
912 Fort Duquesne Boulevard
Pittsburgh, PA 15222

      Counsel for Appellees Joyce Knowles and Dr. Bloom

Elisa Epstein
American Civil Liberties Union
915 15th Street NW
6th Floor
Washington, DC 20005

Marisol J. Dominguez-Ruiz
American Civil Liberties Union
125 Broad Street
18th Floor
New York, NY 10004

      Counsel for Amicus Curiae Craig W. Haney; Pablo Stewart; Stuart Grassian;
      Terry Kupers; Judge David L. Bazelon Center for Mental Health Law; and
      National Alliance on Mental Illness

———————

OPINION[*]

———————

CHUNG, Circuit Judge.

———————————

[*]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

After harming himself while incarcerated at State Correctional Institute Houtzdale ("SCI-Houtzdale"), Brian Brown brought an Eighth Amendment claim against Brooke Civiello, Joyce Knowles, and Adam Bloom, alleging they were deliberately indifferent to his vulnerability to suicide. The District Court granted summary judgment in favor of the Defendants. On appeal, Brown argues there is a genuine dispute of material fact and that the District Court erred in granting summary judgment.[1] For the reasons set forth below, we will affirm the District Court's order as to Civiello and reverse as to Knowles and Bloom (the "Medical Defendants").

I.      BACKGROUND[2]

Brown was incarcerated at SCI-Houtzdale from November 2021 to February 2022, and during much of that time he was housed in units for prisoners with psychiatric illness. Knowles worked as a Psychiatric Nurse Practitioner and Bloom worked as a Psychiatrist and both had multiple contacts with Brown. Brown's medical records reflect that he had a history of self-harm, and that at least one doctor determined that Brown was engaging in self-harm in order to obtain secondary gain, specifically his preferred housing arrangements ("secondary gain conclusion"). On November 2, 2021, for instance, a doctor opined that Brown might harm himself in order to secure a preferred housing assignment. It is uncontested that the Medical Defendants knew of this concern. Their

---

[1]     Brown also brought a Fourteenth Amendment claim but does not appeal the District Court's grant of summary judgment on that claim.

[2]     Because we write for the parties, we recite only the facts pertinent to our decision.

last contact with Brown before the self-harm incident at the center of this lawsuit was Bloom's appointment with Brown on December 28, 2021, while Brown was in a restrictive housing unit. For the following six weeks, Brown was housed in a specialized unit for prisoners in need of specialized mental health services, and the records do not reflect any contact with the Medical Defendants during this time.

On February 11, 2022, Brown was transferred to a general population housing unit, where he began to express suicidal thinking. He was seen by Civiello, a Psychological Services Specialist, whose job was to provide counseling, implement treatment plans, and conduct psychological tests. After Brown was positive for all chronic and acute suicide risk factors assessed by Civiello, she called the Medical Defendants so that Brown could be evaluated for placement in a Psychiatric Observation Cell ("POC"), a cell designed for prisoners experiencing mental health crises or who pose an immediate risk of harm to themselves or others. Civiello herself was not authorized to place Brown in a POC. Brown states that Civiello communicated his suicidal ideation to the Medical Defendants, but downplayed it as "just thoughts and anxiety." JA130. It is uncontested that Civiello and the Medical Defendants knew Brown was experiencing suicidal ideation on that date.

It is also uncontested that the Medical Defendants declined to assess Brown for POC placement, after speaking with Civiello. Brown states that the Medical Defendants told Civiello that Brown should "work through it," JA133, which they deny. Civiello says the Medical Defendants told her that Brown was at his "baseline," JA437, and the Medical Defendants state that they "sought to avoid encouraging further self-harm on

4

[Brown's] part motivated by a desire to manipulate his housing assignments." JA184, 188.

After informing Brown he would not be assessed for POC placement, Civiello offered to continue her session with Brown. Brown rejected her offer and told Civiello that he was "going back to [his] cell to end the pain [he] felt." JA133. Upon returning to his cell, Brown cut his wrists and ingested an unknown quantity of unknown pills.

On August 17, 2022, Brown filed a pro se Amended Complaint, asserting claims under 42 U.S.C. § 1983 against Civiello, Knowles, and Bloom, for violations of the Eighth Amendment. In November 2023, all defendants moved for summary judgment. The District Court granted their motions on June 10, 2024. Brown timely appealed.

II.    DISCUSSION[3]

Summary judgment is warranted where "there is no genuine issue of material fact and, if viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as matter of law." Tse v. Ventana Med. Sys., Inc., 297 F.3d 210, 218 (3d Cir. 2002). A fact is a material where it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). And a dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

---

[3]    The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment *de novo.* Ellis v. Westinghouse Elec. Co., LLC, 11 F.4th 221, 229 (3d Cir. 2021).

5

To state an Eighth Amendment claim that the defendant showed deliberate indifference to a vulnerability to suicide, a plaintiff "must show: (1) that the individual had a particular vulnerability to suicide…; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." Palakovic v. Wetzel, 854 F.3d 209, 223-24 (3d Cir. 2017). Deliberate indifference is manifest where a prison official, while knowing the prisoner faces a substantial risk of harm, fails to respond reasonably to that risk. Farmer v. Brennan, 511 U.S. 825, 847 (1994). Furthermore, "claims of negligence or medical malpractice, without some more culpable state of mind" cannot give rise to a viable deliberate indifference claim. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

On appeal, Brown argues the District Court granted summary judgment in error because there is a genuine dispute of material fact as to whether Civiello and the Medical Defendants responded reasonably to the substantial risk of harm he faced on February 11, 2022.

A. Summary Judgment Was Properly Granted in Favor of Civiello

Civiello concedes that Brown has established a genuine dispute of material fact as to the first two elements and thereby has waived any argument to the contrary. The parties disagree, though, whether there is a genuine dispute that Civiello acted reasonably to abate the risk of harm Brown faced. Brown identifies two points where he asserts Civiello's actions were unreasonable: (1) when she called Medical Defendants; and (2) after her call with Medical Defendants. For the reasons that follow, we are not persuaded

6

by the first argument and conclude that Brown forfeited the second argument. Thus, we will affirm the District Court's grant of summary judgment in favor of Civiello.

We conclude that there is no genuine dispute that Civiello took reasonable measures when she called Medical Defendants. Brown argues that Civiello did not act reasonably because she downplayed his suicidal intent when speaking with the Medical Defendants. Even if Civiello did not fully articulate the details of Brown's suicidal ideation, and only stated that he had suicidal "thoughts and anxiety," JA130, her conduct would be negligent and hence would not reflect a "conscious disregard of a serious risk[.]" Plantier, 182 F.3d at 197. Thus, there is no genuine dispute of material fact regarding the reasonableness of Civiello's call to the Medical Defendants. Palakovic, 854 F.3d at 224.

Brown also argues that there is a genuine dispute whether Civiello responded reasonably after he told her that he was "going back to his cell to end the pain [he felt]," because she permitted him to return to his cell without taking additional protective measures. JA130. Brown forfeited this argument by not raising it before the district court. United States v. Dowdell, 70 F.4th 134, 143 (3d Cir. 2023). We will only reach forfeited arguments in extraordinary circumstances, which do not exist here. See Wood v. Milyard, 566 U.S. 463, 472 (2012); Altman v. Altman, 653 F.2d 755, 758 (3d Cir. 1981) Therefore, we will affirm the grant of summary judgment as to Brown's Eighth Amendment claim against Civiello.

B.      <u>The District Court Erred in Granting Summary Judgment on Brown's Eighth Amendment Claim Against the Medical Defendants</u>

      1.      The Medical Defendants Have Forfeited Challenging the Existence of a Genuine Dispute as to Anything Other than the Reasonableness of their Response

As noted above, the elements of an Eighth Amendment vulnerability-to-suicide claim are "(1) that the individual had a particular vulnerability to suicide…; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." <u>Palakovic</u>, 854 F.3d at 223-24; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (non-moving party must "make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden at trial[.]").  The Medical Defendants do not challenge that they knew Brown had a particular vulnerability to suicide on February 11, 2022, and, in fact, acknowledge that they forfeited this argument.

2.  There is a Genuine Dispute that the Medical Defendants Responded Reasonably

As with Civiello, Brown argues that there is a genuine dispute whether the Medical Defendants acted unreasonably in response to the risk of substantial harm he faced on February 11, 2022, or whether instead their response was a reasonable one, rooted in the exercise of professional judgment entitled to our deference.

"[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."  <u>Brown v. Borough of</u>

8

Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).[4]  In contemplating deliberate indifference, courts afford "considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," but "[i]mplicit in this deference … is the assumption that such an informed judgment has, in fact, been made."  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); see also White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990) (holding that treatment decisions of prison medical professionals are entitled to deference unless their decisions are not a product of professional judgment).  The failure to evaluate can manifest as a deliberately indifferent denial of care (or the delay of care for non-medical reasons), but also as a deficient, yet non-deliberately indifferent, professional judgment.[5]  A diagnosis based upon an insufficient examination is simply "the . . . exercise of deficient professional judgment."  Brown, 903 F.2d at 278; Pearson, 850 F.3d at 538 (where nurse "examined [inmate], [mis]diagnosed him with a pulled muscle," and took no further action, claim "is one that [nurse] inadequately diagnosed and treated his medical condition").

---

[4]  This principle extends to medical professionals who are not physicians.  See, e.g., Pearson v. Prison Health Serv., 850 F.3d 526, 538-39 (3d Cir. 2017) (applying professional judgment standard to care nurses rendered to prisoner).

[5]  See, e.g., Pearson, 850 F.3d at 540-41 (summary judgment improperly granted when nurse refused to evaluate prisoner although a corrections officer advised him prisoner was suffering from "excruciating pain[,]"); id. at 539 (summary judgment properly granted when nurse declined to evaluate inmate's bleeding due to belief that it was caused by recent surgery).

9

Brown asserts that the Medical Defendants unreasonably responded to Civiello's request for POC assessment by merely saying that Brown had to "work through it." JA133. Brown contends that their decision to neither ask Civiello any further questions, nor to assess him, was not made in the exercise of professional judgment, but instead was the product of a dated, non-medical interest in "avoid[ing] encouraging further self-harm on [Brown's] part motivated by a desire to manipulate his housing assignments." JA184, 188.

The record, which the Medical Defendants chose not to supplement, reflects only that they perfunctorily responded to Civiello's call by "stat[ing] that this appears to be the individual's baseline and declined for the individual to be brought up for evaluation." JA437. It does not reflect what information she provided them nor reflect that they asked Civiello any questions. In other words, the uncontested record only reflects that Civiello communicated that Brown was suffering from suicidal ideation and that the Medical Defendants responded by saying this was Brown's baseline without taking any steps to evaluate him. The Medical Defendants do not argue that this conduct would be a reasonable response to actual suicidal ideation. Accordingly, Brown has created a genuine dispute that he was "denied reasonable requests for medical treatment, or necessary medical treatment was delayed for non-medical reasons." See Pearson, 850 F.3d at 540-41 (declining to examine prisoner despite notice of severity of symptoms).

The Medical Defendants nonetheless contend that their response was reasonable because, in their professional judgment, further engaging with Brown would only reinforce a pattern of behavior of self-harm to gain better housing benefits. This

argument is unavailing for a number of reasons. First, they have forfeited any claim that the "seriousness of [Brown's suicidal ideation] was [not] communicated to [them]," Pearson, 850 F.3d at 540, and that, as a result, they did not know Brown was vulnerable to suicide. In other words, they have already acknowledged that they were aware Brown was suicidal on February 11, 2022. As they do not argue that declining to engage with Civiello and assess Brown would be a reasonable response to actual suicidal ideation, their desire to avoid secondary gain is irrelevant.

Second, even if we interpret "potential for suicide"[6] more broadly to mean "potential for self-harm for purposes of secondary gain," there is a genuine dispute that the Medical Defendants' response was an exercise of professional judgment. As we noted above, the deference courts afford to medical professionals' judgment in the treatment of incarcerated persons is based on "the assumption that such an informed judgment has, in fact, been made." Pierce, 612 F.2d at 762. However, the record does not indicate that the Medical Defendants' belief that Brown was acting for secondary gain on February 11th was an *informed* one. The secondary gain conclusion was first made on November 2, 2021, and the Medical Defendants' last contact with Brown was on December 28, 2021. The record before us reflects that the Medical Defendants had no

---

[6] See Suicide (definition 1a), Merriam-Webster's Collegiate Dictionary, 1575 (12th ed. 2026) ("the act or an instance of ending one's own life voluntarily and intentionally[,]"); Suicide (definition 1), Black's Law Dictionary 1740 (12th ed. 2024) ("[t]he act of taking one's own life[,]"); Suicide (definition 1), the American Heritage Dictionary 1743 (5th ed. 2018) ([t]he act or an instance of intentionally killing oneself[.]").

11

further interaction with Brown until Civiello's call on February 11, 2022, and that they did not personally evaluate Brown on that date, or even obtain additional information from Civiello. Given the intervening weeks and failure to further evaluate, a reasonable jury could find that the Medical Defendants' conclusion that Brown sought secondary gain on February 11, 2022, and was not actually suicidal, was not the product of professional judgment. See Pearson, 850 F.3d at 540 (quoting Farmer, 511 U.S. at 843 n.8) ("[A]n official may not escape liability by 'merely refus[ing] to verify underlying facts that he strongly suspect[s] to be true, or declin[ing] to confirm strong inferences of risk that he strongly suspect[s] to exist.'").[7]

Stated differently, because the record before us indicates that the Medical Defendants' diagnosis and response were not the products of a recent evaluation, there is a genuine dispute (1) whether the Medical Defendants violated the Eighth Amendment by "den[ying] reasonable requests for medical treatment, or [delaying] necessary medical treatment [] for non-medical reasons," id., or (2) whether they did not violate the Eighth

---

[7]    Judge Phipps does not join this part of the opinion, vacating the entry of summary judgment in favor of the Medical Defendants. He respectfully dissents from this part of the decision because in his view, the actions taken by the Medical Defendants were part of a medical judgment so Brown's Eighth Amendment claim does not fit into the denial-of-care paradigm and, as a matter of law, a negligent medical judgment does not constitute deliberate indifference. See Palakovic v. Wetzel, 854 F.3d 209, 227 (3d Cir. 2017) ("Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment.").

12

Amendment and simply exercised deficient professional judgment.[8]  Therefore, we will

reverse the grant of summary judgment as to the Medical Defendants.

III.    CONCLUSION

For the reasons presented above, we affirm in part and reverse in part.

---

[8]    See Brown, 903 F.2d at 278 (medical staff exercised professional judgment where their decision was product of contemporaneous evaluation of prisoner); compare Pearson, 850 F.3d at 540-41 (genuine dispute existed when nurse who declined to evaluate prisoner relied on two evaluations made by other nurses earlier that day) with id. at 538 (summary judgment appropriate where course of action was based upon defendant's own evaluation of prisoner) and id. at 539-40 (summary judgment appropriate where nurse declined to evaluate bleeding based on knowledge of recent surgery).  The latter cite actually addresses whether a nurse had reason to know that the inmate's condition was serious and is arguably not on point here, where the Medical Defendants do not contest knowledge.  However, this portion of Pearson could also be interpreted to reflect that when a defendant relies upon an earlier diagnosis (recent surgery), even when informed of a new symptom (bleeding), that reliance may still be a product of professional judgment where the symptom is an expected result of that diagnosis.  Id.  That interpretation is consistent with the argument raised by the Medical Defendants.  Nonetheless, Brown's case is distinguishable, and therefore, poses a genuine dispute, because of (1) the 45-day lapse in time between diagnosis and emergence of the new symptom and (2) the fact that, unlike bleeding, the emergent symptom here is typically a product of diagnosis; i.e., one typically determines that a person wants to obtain secondary gain, rather than actually end his own life, through a diagnostic process.

13